Main Investment Company, Appellant, *v.* Gisolfi,
Appellant.

Argued March 2, 1964. Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*Ralph P. Carey,* for plaintiff.

*Myron A. Pinkus,* with him *Jack Rubenfeld,* for defendant.

OPINION BY MONTGOMERY, J., April 14, 1964:

This is an action in replevin brought by Main Investment Company (Main), a New Jersey finance company, authorized to do business in the State of Pennsylvania, against Anthony J. Gisolfi, a resident of Scranton, Pennsylvania, to obtain possession of a 1961 Chevrolet Impala convertible automobile. After the case was submitted to the court on the pleadings, consisting of complaint, answer with new matter, and reply, and on an agreed statement of facts, the court awarded the automobile to Gisolfi but denied to him an award for damages. Both parties have appealed.

The facts applicable to these appeals are as follows. On October 28, 1961, for $3,300 Gisolfi bought and received delivery of a 1961 Chevrolet Impala convertible automobile from Casterline Auto Marts (Casterline), a partnership, formerly doing business as a nonfranchised dealer in new and used automobiles. The automobile had been purchased by Casterline from another automobile dealer for resale from inventory. At the time of the

sale Gisolfi paid Casterline the fee for title registration and tags, paid the Pennsylvania sales tax, and received a temporary registration transfer certificate and an executed bill of sale. On November 8, 1961, Casterline executed and delivered to Main a trust receipt security agreement for financing nine automobiles in the total amount of $17,950 but, disregarding its prior transaction with Gisolfi, included the automobile in question for a loan of $2,300. A certificate of title on this automobile in the name of Casterline, dated November 15, 1961, and listing an encumbrance of $2,300 in favor of Main, was delivered to Main. After reciprocal demands for the vehicle and certificate of title were refused by both parties, Main issued a writ of replevin with bond in the amount of $5,000 on January 5, 1962, and Gisolfi filed a counterbond and retained possession of the vehicle. The certificate of title remained with Main. The automobile could not be used from October 28, 1961, until May 1, 1962, because Gisolfi had no certificate of title nor registration tags. In their stipulation of facts, the parties agreed, "14. The vehicle has depreciated in value since October 28, 1961. The depreciation shall be determined and established by the differential in retail price reflected in N. A. D. A. (Dealers' Guide) and the original purchase price."

In regard to the replevin action, we are constrained to agree with the lower court's summary of the facts, wherein it stated, "that at the time of these events that Casterline had title to the vehicle, else a certificate in its name could not have been issued to Main as the lien holder, that the vehicle whether 'new' or 'used' was in Casterline inventory, that Main financed it as part of inventory, that Main had no security interest in the vehicle at the time of the sale to Gisolfi, and that as to this vehicle at least, Casterline perpetrated a fraud on Main in securing an advance on a vehicle which

had passed out of Casterline's possession by a sale from inventory in the ordinary course of trade." We further agree that the lower court correctly concluded that the Uniform Commercial Code §9-307 conclusively controls this matter. That section states: "(1) A buyer in ordinary course of business (subsection (9) of Section 1-201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Act of October 2, 1959, P. L. 1023, §9, 12A. P.S. §9-307. Gisolfi was a buyer in the ordinary course of business in this situation; he bought the car from a dealer in the business of selling cars from inventory. Thus Gisolfi was unaffected by any security interest in the automobile held by others.

Main relies on *Sterling Acceptance Co. v. Grimes*, 194 Pa. Superior Ct. 503, 168 A. 2d 600 (1961), for the principle that, since the automobile in question was not a "new" car, Gisolfi was on notice that a certificate of title had been issued for the automobile; therefore, Gisolfi should have demanded that certificate of title before accepting delivery of the automobile. In that case at page 509, this Court stated, in construing the Uniform Commercial Code and The Vehicle Code, "We believe that the legislature did not intend to have the rights of buyers of *new* automobiles . . . defeated by lien creditors of the dealer, through the noting of encumbrances upon dealer's certificates of title which were not required and generally were not issued." (Emphasis supplied) Further, we stated, "The purchaser of a used automobile knows that a certificate of title has been issued for the automobile and expects to have it produced at the time of sale, but the purchaser of a new vehicle expects no such certificate to exist." Even if that be taken as a correct principle of

law, we do not believe that it is applicable in this situation. When Gisolfi bought and accepted delivery of the automobile in question, no security interest had been placed on the automobile; and, in fact, Main never could have a security interest in this automobile because title and possession had passed to Gisolfi on October 28, 1961. The trust receipt security agreement was not executed until eleven days later, on November 8, 1961.

In the appeal at No. 18 February Term, 1963, Gisolfi seeks damages for his inability to use the automobile from October 28, 1961, until May 1, 1962. The lower court denied damages to Gisolfi on the theory that the detention of the automobile was due to the fraud of Casterline and not to any action of Main, who was only making an effort "to support a supposed legal right". However, we find that this reasoning is irrelevant to the issue of damages in this case. It is well established in Pennsylvania that the successful party in a replevin action has the right to establish damages. *Armstrong & Latta v. City of Philadelphia,* 249 Pa. 39, 94 A. 455 (1915) ; *Cox v. Burdett,* 23 Pa. Superior Ct. 346 (1903). Applicable to the issue of damages in this case is the statement from Sedgwick's Measure of Damages, 4th Edition 583, which was quoted by this Court in *Cox v. Burdett,* supra, at page 352: " 'Where the defendant succeeds and has judgment in his favor, for a return, the general rule is that he is also entitled to damages; and the decrease in value of the goods since the time of the replevin, with interest on their entire value, forms proper measure of his damages. So the defendant is entitled to damages for deterioration in the value of the goods from the time of the replevin, although it be not pretended that the decrease in value is attributable in any degree to the act or default of the plaintiff.' "

Judgment affirmed in Appeal No. 13.

In Appeal No. 18, judgment is reversed and the case remanded to the lower court, limited solely to the right to appellant Anthony Gisolfi to establish damages in the manner provided for in the stipulation filed by the parties.