239 So.2d 621 (1970)
Donald L. STROMAN, Marjorie Stroman and Plaza First National Bank, Appellants,
v.
The ORLANDO BANK & TRUST COMPANY, a Florida Banking Corporation, William C. Hooker, Jr., Individually and William C. Hooker D/B/a Prestige Cars, Appellees.
No. 70-18.
District Court of Appeal of Florida, Fourth District.
September 30, 1970.
*622 J. Stuart Smith, of Smith & Smith, Orlando, for appellants.
Robert J. Pleus, Jr., of Andrews, Smathers, Tepper & Pleus, Orlando, for Orlando Bank & Trust Co.
REED, Judge.
This is an appeal from a final judgment rendered by the Circuit Court for Orange County, Florida, in favor of the plaintiff-appellee, The Orlando Bank & Trust Company.
The issue presented here is whether or not a transaction between The Orlando Bank & Trust Company and a used car dealer named Hooker gave appellee, The Orlando Bank & Trust Company, a security interest in a motor vehicle which it could assert against the defendant Donald L. Stroman who had previously bought and taken possession of the vehicle from Hooker, but had not secured a title certificate.
From the record and the briefs the following are the material facts. On 30 August 1968 the defendant Donald L. Stroman purchased from Hooker then a used car dealer in Orange County, Florida, a Ford automobile. Mr. Stroman paid the full purchase price and took delivery of the vehicle on that date. Mr. Stroman did not, however, receive a title certificate. Mr. Stroman stated that he relied on Hooker to process the title certificate through the Motor Vehicle Department and have a new certificate issued in his name. Instead of doing this, Hooker, on 12 September 1968 took the certificate of title to the plaintiff, The Orlando Bank & Trust Company, and on the strength thereof obtained a loan of $3,000.00. The certificate of title at this time was not in the name of Hooker, but bore endorsements of all prior owners. When Hooker delivered the certificate of title to the bank, the description of the motor vehicle was added to a trust receipt which Hooker had previously executed to the bank. The trust receipt provided that on a sale of the vehicle, Hooker would pay the sale proceeds to The Orlando Bank & Trust Company to apply against the former's debt to the bank. At no time was a notice of the plaintiff's lien filed in the office of the Director of Motor Vehicles under the provisions of F.S. Section 319.27 (2), F.S.A.
Agents of the plaintiff inspected the business premises of Hooker in October and November, 1968, to determine whether or not Hooker had possession of the subject vehicle. On these occasions, the vehicle was found to be on Hooker's lot. It appears from the evidence that the vehicle was on the lot in October and November because it had been placed there by Mr. Stroman for the purpose of servicing. In January of 1969 a check of Hooker's premises by an agent of the bank revealed that the vehicle was gone, and the bank demanded to be paid.
When Hooker failed to pay, the plaintiff bank filed the present suit to foreclose its lien on the vehicle. It joined both Mr. and Mrs. Stroman because of their possession of the vehicle and Plaza First National Bank because it claimed a security interest in the vehicle created in its favor by Mr. Stroman. The defendants' answer denied that plaintiff had a security interest in the vehicle and requested as affirmative relief an order cancelling the plaintiff's claim of lien and directing the plaintiff to deliver to the defendants the title certificate.
*623 The trial court found that the plaintiff had a valid lien superior to the rights of the defendants and ordered its foreclosure. It is from the final judgment directing such foreclosure that the present appeal has been taken.
In our opinion, the trial court erred in holding that the plaintiff bank had a lien on the motor vehicle. At the time Hooker attempted to create a lien on the vehicle in favor of plaintiff bank, he had already sold his entire interest in the vehicle to Mr. Stroman and delivered the vehicle. Hence he had no interest in the vehicle which he could subject to a lien. The subsequent attempt to create a lien in favor of the plaintiff was a nullity under the general principle that no one can confer a better title than he has in personal property, unless some principle of estoppel operates to bar a claim under an otherwise better title. Glass v. Continental Guaranty Corporation, 1921, 81 Fla. 687, 88 So. 876, 879. In the present case, we fail to find any basis for an estoppel against Mr. Stroman. He did what any prudent buyer would have done. After he took possession of the vehicle and paid for the same, he relied on the dealer to secure the proper transfer of title, and this by law is the dealer's duty. F.S. Section 319.23(5), F.S.A.
The trial court was concerned  as are we  with the language of F.S. Section 319.22(1), F.S.A., reading as follows:
"Except as provided in §§ 319.21 and 319.28, no person acquiring a motor vehicle from the owner thereof, whether such owner be a dealer or otherwise, hereafter shall acquire a marketable title in or to said motor vehicle until he, she, or it shall have had issued to him, her or it a certificate of title to said motor vehicle * *. Except as otherwise provided herein, no court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any such motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by and on a certificate of title duly issued, in accordance with the provisions of this law."
This statute, however, does not prevent passage of a valid title to a purchaser from a dealer where the purchaser has received possession of the vehicle and in good faith relies on the dealer to perform his statutory duty to secure a proper title certificate in the purchaser's name. Correria v. Orlando Bank & Trust Company and William C. Hooker, Jr., d/b/a Prestige Cars, Fla.App. 1970, 235 So.2d 20; Motor Credit Corporation v. Woolverton, Fla. 1957, 99 So.2d 286. If we are correct in this, it would follow that the plaintiff acquired no security interest in the motor vehicle from Hooker and had no standing to rely on Section 319.22(1).
The result which we reach could be equally predicated on Section 679.9-307(1) of the Uniform Commercial Code which reads as follows:
"A buyer in ordinary course of business (§ 671.1-201(9)) * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." (Emphasis added.)
A "buyer in ordinary course of business" is defined in the Code as one who in good faith and without knowledge that a sale to him is in violation of the ownership rights or security interest of another buys goods in the ordinary course of business from a person in the business of selling goods of that kind (F.S. Section 671.1-201(9), F.S.A.). From the record it appears that Mr. Stroman was a buyer from Hooker in the ordinary course of business.
The normal operation of Section 679.9-307(1), supra, would protect a buyer of goods in the ordinary course of business from a security interest created before the sale to the buyer. That section has, however, been interpreted to protect such a buyer who takes possession of a motor vehicle against one claiming a security interest *624 therein which a dealer attempted to create after the sale to the buyer and in a situation such as the present where the dealer had retained the title certificate for the ostensible purpose of obtaining a new certificate registering the vehicle in the buyer's name. See Weisel v. McBride, 1960, 191 Pa.Super. 411, 157 A.2d 613, and Main Invest. Co. v. Gisolfi, 1964, 203 Pa.Super. 244, 199 A.2d 535. We agree with this interpretation of the section as being consistent with the language as well as the purpose of the enactment.
We are aware of the fact that the Uniform Commercial Code does not repeal F.S. chapter 319, F.S.A., and that the latter controls any conflicting provisions in the Uniform Commercial Code, but on the facts in the present case, there are no conflicts between F.S. chapter 319, F.S.A. and the Uniform Commercial Code.
On remand the trial court is instructed to dismiss the complaint with prejudice; to order that the plaintiff's lien claim on Stroman's vehicle is cancelled; and to order the plaintiff to deliver the title certificate to the defendant Donald L. Stroman.
Reversed and remanded.
CROSS, C.J., and OWEN, J., concur.