RALPH PETERSON, d/b/a Peterson's Mobile Home Sales, Plaintiff and Third-Party Defendant-Appellant, *v.* RICHARD L. ZIEGLER *et al.*, Defendants.—(R. C. HUDLER, Intervening Third-Party Plaintiff-Appellee.)

Fifth District   No. 75-311

Opinion filed June 11, 1976.

EBERSPACHER, J., dissenting.

Stuart Dobbs, of Denby, Dobbs & Meno, of Carlinville, for appellant.

Gerald Patrick Huber and George E. Ginos, both of Hillsboro, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

The plaintiff, Ralph Peterson, appeals from a judgment of the circuit court of Montgomery County which held that an intervenor, R. C. Hudler, was entitled to the possession of a house trailer sold by the plaintiff to the defendants, Richard and Marie Ziegler.

The principal question in this appeal is whether an application for a certificate of title for a house trailer, which indicated the existence of a lien on the trailer and which was signed by the purchaser of the trailer, constituted a security agreement within the meaning of section 9—203 of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 9—203) between the seller and purchaser.

The plaintiff is a dealer in mobile homes, that is, house trailers. On November 4, 1970, the plaintiff and defendants executed a contract for the sale of a trailer for a cash price of $12,085 and a finance charge of $7245. Defendants made a down payment of $1735. The contract provided that defendants' payment of the balance of the purchase price was to be secured by a mortgage on land. It said nothing about creating a security interest.

When the sales contract was executed, the land which the defendants were to mortgage to the plaintiff was owned by R. C. Hudler. It was a 160-acre farm which the defendants worked under an agreement with Hudler. The defendants had a contract for deed with Hudler with respect to the farm. They intended to acquire the farm and then to mortgage the farm to the plaintiff.

By the end of November, 1970, the plaintiff delivered the trailer to the farm. The defendants had poured a concrete slab. The trailer was set on concrete blocks which rested on the slab. The plaintiff removed the trailer's wheels. The defendants supplied the trailer with water and electricity and then began to reside there.

Because of the defendants' inability to make timely payments on the farm, Hudler canceled the contract for deed. Hudler agreed to lease the 160 acres to the defendants for $6000 rent per year. The defendants were thus not able to mortgage the farm to the plaintiff.

On May 12, 1971, the plaintiff and defendant Richard Ziegler cooperated in filling out an application for a certificate of title for the house trailer. The plaintiff printed on the application the make, model, and serial number of the house trailer. The plaintiff also caused the application to show that he had a security interest in the trailer in the amount of $17,595. Defendant Richard Ziegler signed the application and filed it with the Illinois Secretary of State. A certificate of title was issued for the trailer on June 1, 1971, which revealed the existence of the plaintiff's security interest in the trailer. The defendants had difficulty in making the payments on the house trailer, and they defaulted on a number of payments. On March 25, 1974, the plaintiff filed a complaint under "An Act to revise the law in relation to replevin" (Ill. Rev. Stat. 1973, ch. 119, pars. 1-28) and sought the return of the house trailer.

On May 2, 1974, Hudler filed with the circuit court of Montgomery County a distress warrant, in accordance with section 17 of "An Act to revise the law in relation to landlord and tenant" (Ill. Rev. Stat. 1973, ch. 80, par. 17), which alleged that the defendants owed Hudler $12,000 rent on the farm. Hudler requested that the defendants' personal property on the farm be seized as security for payment of the rent.

Hudler then filed a petition to intervene in the plaintiff's action for replevin of the house trailer. His petition alleged that he was entitled to the possession of the trailer because of the defendants' failure to pay their rent. Hudler was allowed to intervene.

After a trial, the circuit court made an order on March 7, 1975, which awarded Hudler possession of the trailer. The defendants have not appealed from the order.

The plaintiff contends that he had a perfected security interest in the trailer before the landlord's lien arose, and that his interest should be given priority over Hudler's interest. Hudler argues in response that no security interest for the plaintiff was ever created in the trailer because the defendants did not sign a security agreement, as required by section 9—203 of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 9—203).

The intervenor, Hudler, does not argue that the trailer was a fixture on

his land. Thus the question whether Hudler owned the trailer by reason of its being a fixture need not be considered. Moreover, as a result, the complicated passages of section 9—313 of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 9—313), dealing with the perfection of security interests in fixtures, do not apply to this case.

Three problems typically arise when a creditor asserts that he has a security interest in personal property owned by his debtor. These problems are whether a valid security interest has been created which is enforceable by the creditor against the debtor, whether the security interest has been perfected by the creditor so that it is generally enforceable by the creditor against third parties, and whether the security interest has priority over other liens and security interests in the personal property. All these questions are usually answered by recourse to article 9 of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, pars. 9—101 to 9—507), which is a comprehensive statute on secured transactions.

When, however, the personal property in which a security interest is claimed is a vehicle for which a certificate of title is required by section 3—101 of the Illinois Vehicle Code (Ill. Rev. Stat. 1969, ch. 95½, par. 3—101), the first problem is governed solely by the Uniform Commercial Code, the second problem by the Illinois Vehicle Code, and the third by resort to both the Uniform Commercial Code and the Illinois Vehicle Code. The trailer involved in this case is a vehicle for which a certificate of title is required. (See Ill. Rev. Stat. 1969, ch. 95½, pars. 1—217, 3—101.) The extent of the plaintiff's interest, in view of Hudler's assertion of a landlord's lien on the trailer, can, therefore, be determined only by applying both article 9 of the Uniform Commercial Code and chapter 3, article II, of the Illinois Vehicle Code. To do this correctly, the precise scope of these statutes must be ascertained.

Article nine of the Uniform Commercial Code sets forth the requirements for the creation of a valid security interest in personal property in sections 9—203 and 9—204 (Ill. Rev. Stat. 1969, ch. 26, pars. 9—203, 9—204). The Illinois Vehicle Code does not purport to control the creation of security interests in vehicles. (See 1 G. Gilmore, Security Interests in Personal Property §20.5 (1965).) Thus the creation of a security interest in a vehicle for which a certificate of title is required is governed solely by article 9 of the Uniform Commercial Code.

On the other hand, the perfection of security interests in vehicles for which certificates of title are required is a matter regulated only by chapter 3, article II, of the Illinois Vehicle Code, to the exclusion of article 9 of the Uniform Commercial Code. See Ill. Rev. Stat. 1969, ch. 26, par. 9—203(2); ch. 95½, pars. 3—202, 3—207.

The determination of the priority of conflicting security interests is governed by sections 9—301 through 9—318 of the Uniform Commercial

Code (Ill. Rev. Stat. 1969, ch. 26, pars. 9—301 to 9—318), with the significant exception that security interests noted on a vehicle's certificate of title are presumed to have a priority, among themselves, which corresponds to the order in which they are listed on the certificate of title. See Ill. Rev. Stat. 1969, ch. 95½, par. 3—107.

Having identified the appropriate sources of law for resolving different problems concerning security interests in vehicles, this court may now decide whether the plaintiff's asserted security interest should prevail over Hudler's lien on the trailer. The first question to be considered is whether the defendants ever created a valid security interest in the trailer in favor of the plaintiff.

The requirements for the creation of a security interest by a debtor in favor of his creditor are that the debtor must have or acquire rights in the collateral, the creditor must give value to the debtor, the creditor and debtor must agree that a security interest shall attach to the collateral, and either the collateral must be in the possession of the creditor or there must be a written security agreement signed by the debtor which contains a description of the collateral. (Ill. Rev. Stat. 1969, ch. 26, pars. 9—203(1), 9—204(1).) Because Hudler argues only that the last of these requirements was not met, this requirement alone will be discussed.

The plaintiff delivered the trailer into the defendants' possession; therefore, the plaintiff could claim a security interest in the trailer only if one or both of the defendants signed a written security agreement which contained a description of the trailer. (Ill. Rev. Stat. 1969, ch. 26, par. 9—203(1)(b).) A security agreement is "an agreement which creates or provides for a security interest." (Ill. Rev. Stat. 1969, ch. 26, par. 9—105(h).) Moreover, the Uniform Commercial Code defines an agreement as "the bargain of the parties in fact as found in their language or by implication from other circumstances." Ill. Rev. Stat. 1969, ch. 26, par. 1—201(3).

The defendants signed two documents in their dealing with the plaintiff. The first was the sales contract which both defendants signed. This was not a security agreement because it did not create or provide for a security interest in the trailer. Instead, the sales contract indicated that the defendants' payment was to be secured by a mortgage on land.

The other document was the application for a certificate of title for the trailer which defendant Richard Ziegler signed. The application contained a description of the trailer which was sufficient for the creation of a security interest because, by setting forth the make, model, and serial number of the trailer, the application reasonably identified the trailer. (See Ill. Rev. Stat. 1969, ch. 26, par. 9—110.) Because the application contained the debtor's signature and an adequate description of the trailer, the plaintiff acquired a security interest in the trailer when the

defendant executed the application if the application created or provided for a security interest and represented a bargain of the parties in fact. See Ill. Rev. Stat. 1969, ch. 26, pars. 1—201(3), 9—105(h), 9—203(1)(b).

The application for a certificate of title showed unequivocally that the plaintiff was to have a security interest in the trailer. A clear indication in writing of the existence of a security interest is enough to amount to a provision for a security interest. To hold otherwise would be to violate a basic principle of article 9 of the Uniform Commercial Code, that only a minimum of formality is required for the creation of a security interest. See Illinois Code Comment to section 9—203 of the Uniform Commercial Code, Ill. Ann. Stat., ch. 26, par. 9—203 (Smith-Hurd 1974).

The circumstances surrounding the execution of the application indicated that the provision for a security interest was the result of a bargain of the parties in fact.The defendants had agreed, at the time of the sale of the trailer, to give security to the plaintiff in the form of a real estate mortgage. When this intention was thwarted, it was reasonable and fair for the plaintiff to seek, and for the defendants to give, a security interest in the trailer. The defendants apparently accomplished or consented to the filing of the application with its notation of a security interest in the plaintiff's favor.

● 1   This application for a certificate of title, therefore, constituted a security agreement which created for the plaintiff a security interest in the trailer. Accord, *Kreiger v. Hartig*, 11 Wash. App. 898, 527 P.2d 483 (1974); *Clark v. Vaughn*, 504 S.W.2d 550 (Tex. Civ. App. 1973).

The second question to be considered is whether the plaintiff perfected his security interest in the trailer. If he did, the time from which the perfection dates is also important.

Section 3—202 of the Illinois Vehicle Code (Ill. Rev. Stat. 1969, ch. 95½, par. 3—202) sets forth the exclusive method of perfecting a security interest in a vehicle for which a certificate of title is required. There must be delivered to the Illinois Secretary of State any existing certificate of title for the vehicle, an application for a new certificate of title containing the name and address of the lienholder and the date of the security agreement, and a filing fee. These things were done in this case, and so, the plaintiff's security interest in the trailer was perfected.

■■  If an application for a certificate of title is delivered to the Illinois Secretary of State within 21 days after the creation of a security interest in a vehicle, the security interest is perfected as of the time of its creation. (Ill. Rev. Stat. 1969, ch. 95½, par. 3—202.) Because the certificate of title for the trailer was issued on June 1, 1971, only 20 days after the plaintiff's security interest was created on May 12, 1971, the application for a certificate of title must have been delivered to the Illinois Secretary of State within 20 days after the creation of the security interest. The

plaintiff's security interest was, therefore, perfected as of the day of its creation, May 12, 1971.

The last problem to be considered involves applying an appropriate rule of priority to the plaintiff's security interest and Hudler's lien. To apply any rule of priority to Hudler's lien, the date on which his lien arose must first be determined.

A landlord's lien on a tenant's personal property does not arise until the personal property is levied upon, pursuant to a judgment of a circuit court that the tenant owes rent to the landlord. (*A.N. Kellogg Newspaper Co. v. Peterson*, 162 Ill. 158, 44 N.E. 411; *Brooks v. La Salle National Bank*, 11 Ill. App. 3d 791, 298 N.E.2d 262.) Hudler's lien on the trailer for unpaid rent thus did not arise before the circuit court rendered a judgment in his favor against the defendants on March 7, 1975.

Choosing an appropriate rule of priority for these competing interests is complicated by the provision of section 9—104(b) of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 9—104(b)) that article 9 of the Uniform Commercial Code does not apply to a landlord's lien. A strictly literal interpretation of this provision would preclude applying any rule of priority from article 9 to Hudler's lien. The purpose of section 9—104(b), however, is only to indicate that article 9 does not govern the creation of a landlord's lien or the priorities between competing landlords' liens. In order for article 9 to be the comprehensive statute that it was meant to be on the subject of consensual security interests, article 9 must always supply a rule for determining the priorities between a consensual security interest and any other kind of lien. Thus, despite the language of section 9—104(b), it is proper to look to article 9 for a rule of priority which will indicate whether the plaintiff's security interest or Hudler's lien should win in this case.

Section 9—310 of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 9—310) gives to certain liens arising by operation of law priority over consensual security interests, even though the security interests were perfected before the liens arose. That section, though, applies only to liens arising from work done on collateral which enhances or preserved the value of the collateral. (See paragraph 1 of the Uniform Commercial Code Comment to section 9—310, Ill. Ann. Stat., ch. 26, par. 9—310 (Smith-Hurd 1974).) A landlord's lien is not such a lien. Consequently, a landlord's lien is not within the terms of section 9—310. *In re Einhorn Bros. Inc.*, 171 F. Supp. 655 (E.D. Pa. 1959).

The rule or priority which must be applied in this case appears in section 9—301(1)(b) of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 9—301(1)(b)): "[A]n unperfected security interest is subordinate to the rights of * * * (b) a person who becomes a lien creditor before the security interest is perfected." This implies that a

perfected security takes priority over the rights of one who becomes a lien creditor after the security interest is perfected. See also Ill. Rev. Stat. 1973, ch. 26, par. 9—301(4).

A lien creditor is one who obtains rights in collateral by attaching or levying upon the collateral. (Ill. Rev. Stat. 1973, ch. 26, par. 9—301(3).) Hudler acquired his rights in the trailer in this manner. (*A. N. Kellogg Newspaper Co. v. Peterson.*) He was, therefore, a lien creditor. He did not become a lien creditor earlier than the date of the judgment of the circuit court, March 7, 1975, which was nearly four years after the plaintiff's security interest was perfected on May 12, 1971.

Application of the rule of priority contained in section 9—301(1)(b) of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 9—301(1)(b)) indicates that the plaintiff's security interest took priority over Hudler's lien. Possession of the house trailer thus should have been awarded to the plaintiff rather than to Hudler.

The judgment of the circuit court of Montgomery County in favor of the intervenor, R. C. Hudler, against the plaintiff, Ralph Peterson, is reversed and possession of the house trailer is awarded to the plaintiff.

Judgment reversed.

CARTER, J., concurs.

Mr. JUSTICE EBERSPACHER, dissenting:

I do not agree that the requirement of a written security agreement signed by the debtor which contains a description of the collateral as required by the Uniform Commercial Code is satisfied by the execution of an application for a certificate of title; particularly in a situation which the parties intended the written security agreement to be a real estate mortgage and there is no evidence that they intended to create any security agreement other than the mortgage.

The "bargain of the parties in fact as found by their language" was the bargain provided for in the sales contract which did provide for a security interest, namely, a mortgage on land, but that security interest was never perfected, because the debtor never became the owner of the land intended to become the security, and therefore never executed such security. As a result something never created could not be perfected by application for title.

I can find no logic in holding that a security interest can only be created under the Uniform Commercial Code and the holding of the majority that a security interest is created by an application under the Motor Vehicle Code, or that "the application contained a description that was sufficient for the creation of a security interest"; nor can I find logic in

holding that the security interest was both created and perfected by the application for a certificate of title under the Motor Vehicle Act, nor that it was created by the application for title and perfected by the issuance of certificate of title.

I would therefore affirm.