FINANCE AMERICA COMMERCIAL CORPORATION, Plaintiff-Appellee, *v.* ECONO COACH, INC., *et al.*, Defendants.—(WILLIAM H. HERCHENBACH *et al.*, Interpleaders-Appellants.)

Second District   No. 80-524

Opinion filed March 27, 1981.—Rehearing denied May 13, 1981.

George E. Downs, of Palatine, for appellants.

Chatz, Sugarman, Abrams, Haber & Fagel, of Chicago, for appellee.

Mr. JUSTICE REINHARD delivered the opinion of the court:

In April 1978, plaintiff filed a complaint against defendants seeking, among other things, a judgment for immediate possession of 17 recreational vehicles which were security for loans made to defendants pursuant

to an inventory loan agreement. In February 1979, Arthur Frey, Donald Gable and William Herchenbach filed a petition to interplead which was heard and allowed. Interpleaders' petition alleged that during 1977 they each had purchased recreational vehicles from certain of the defendants; that certain of the defendants represented to interpleaders that they would forward the certificates of origin for the vehicles to the Illinois Secretary of State for issuance of titles in interpleaders' names; that certain of defendants titled said vehicles in the name "Econo-Coach, Inc." in the State of Florida, and that the titles were then pledged by certain of the defendants as security for loans from plaintiff. Plaintiff thereafter filed a motion for summary judgment against defendants which was granted by the court. In January 1980, plaintiff filed a motion for summary judgment against interpleaders and interpleaders filed an answer thereto. Summary judgment was entered in plaintiff's favor against interpleaders in April 1980. Thereafter, two of the interpleaders, Herchenbach and Gable, appealed from the order granting summary judgment and from a June 1980 order denying their petition for reconsideration.

Before addressing the substantive issue of whether the trial court erred in granting summary judgment we must consider certain preliminary matters. First of all, we would point out that although appellants were brought into this action through their petition to interplead, and although they have been referred to by themselves and the other parties as interpleaders, they in fact appear to be in the nature of intervenors within the scope and meaning of section 26.1 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 26.1) rather than interpleaders (Ill. Rev. Stat. 1979, ch. 110, par. 26.2). Therefore, we will consider Herchenbach and Gable's interest to be that of intervenors, but for clarity's sake will refer to them for purposes of this appeal as appellants.

■■ On October 31, 1980, plaintiff filed a motion to strike the appellants' statement of facts and the appendix to appellants' brief. On November 6, 1980, this court issued an order taking plaintiff's motion with this case. Therefore, plaintiff's motion will have to be addressed at this time. Plaintiff first argues that appellants' statement of facts is totally outside of the record with the exception of one reference to the inventory loan agreement. Supreme Court Rule 341(e)(6) provides that the appellants' brief shall contain a statement of facts "with appropriate reference to the pages of the record on appeal * * *." (Ill. Rev. Stat. 1979, ch. 110A, par. 341(e)(6).) We agree that portions of appellants' 1½-page statement of facts are unsupported by the record, and we do not consider those in this appeal. See *Abbey Plumbing & Heating, Inc. v. Brown* (1977), 47 Ill. App. 3d 719, 721, 365 N.E.2d 115.

■■ Secondly, plaintiff moves to strike the "appendix" to appellants' brief

as not being in compliance with Supreme Court Rule 342. Supreme Court Rule 342 provides in pertinent part:

"(a) Appendix to the Brief. The appellant's brief shall include, as an appendix, a copy of the judgment appealed from, any opinion, memorandum, or findings of fact filed or entered by the trial judge, the notice of appeal, and a complete table of contents, with page references, of the record on appeal." (Ill. Rev. Stat. 1979, ch. 110A, par. 342(a).)

Appellants' "appendix" clearly fails to satisfy the requirements of Rule 342 and is hereby stricken. Although titled "appendix to brief," the document submitted is, in essence, an abstract of the record which cannot be filed unless the reviewing court orders that one shall be filed. Ill. Rev. Stat. 1979, ch. 110A, par. 342(b).

■■ Next, we must address the primary issue on appeal, which is whether the trial court erred in granting summary judgment for plaintiff and against appellants. Summary judgment is appropriate only where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1979, ch. 110, par. 57; *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605; *Cuthbert v. Stempin* (1979), 78 Ill. App. 3d 562, 396 N.E.2d 1197.) Looking at the pleadings on file as well as the affidavit filed by plaintiff, it cannot be said that such conditions exist in the present case and, therefore, we reverse the judgment of the trial court.

Assuming, without deciding, that plaintiff has properly perfected its security interest in the vehicles in question in accordance with the provisions of the Uniform Commercial Code—Secured Transactions (Ill. Rev. Stat. 1979, ch. 26, par. 9—101 *et seq.*) and the Illinois vehicle title and registration law (Ill. Rev. Stat. 1979, ch. 95½, par. 2—101 *et seq.*), the determinative question becomes one of priorities. The general rule regarding priorities between purchasers vis-à-vis creditors is set out in section 9—201 of the Uniform Commercial Code:

"Except as otherwise provided by this Act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors." (Ill. Rev. Stat. 1979, ch. 26, par. 9—201.)

However, a major exception thereto is set out in section 9—307 of the Uniform Commercial Code:

"A buyer in ordinary course of business (subsection (9) of Section 1—201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." (Ill. Rev. Stat. 1979, ch. 26, par. 9—307(1).)

A "buyer in ordinary course of business" is, in turn, defined in section 1—201 of the Uniform Commercial Code as follows:

> " 'Buyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind * * *." Ill. Rev. Stat. 1979, ch. 26, par. 1—201(9).

■■ Although section 9—307 typically comes into play where there is a conflict between a creditor with a prior perfected security interest and a subsequent good faith purchaser, the language of the statute does not expressly limit its application to that situation and we consider it equally pertinent where the conflict is between a prior good faith purchaser and a subsequent creditor with a perfected security interest. As the authors of the Illinois Code Comment to section 9—307 note:

> "The subsection thus applies primarily to inventory. Accordingly an inventory financer must rely solely upon proceeds of the sale of collateral as security." Ill. Ann. Stat., ch. 26, par. 9—307, Code Comment, at 197 (Smith-Hurd 1979).

While neither of the parties have cited or discussed the above provisions, or cases decided thereunder, we find them to be dispositive of this appeal. Although there are no Illinois decisions directly on point, our research has disclosed authority from other States. In *Stroman v. Orlando Bank & Trust Co.* (Fla. App. 1970), 239 So. 2d 621, the District Court of Appeal of Florida addressed a problem nearly identical to that faced by this court in the case at bar. In that case, the defendant purchased an automobile from a used car dealer, paid the full purchase price and took delivery of the vehicle, but failed to obtain a certificate of title, relying on the dealer to have the vehicle properly titled in defendant's name. The dealer, instead of transferring title to the defendant, took the certificate of title to the plaintiff bank and on the strength thereof obtained a $3,000 loan. When the dealer failed to repay the loan on demand, the plaintiff bank filed suit to foreclose its lien on the vehicle. The trial court ordered foreclosure, but the appellate court reversed stating alternative grounds for its decision.

The first ground for the court's decision was that at the time the dealer attempted to create a lien on the vehicle in favor of the plaintiff bank, he had already sold his entire interest in the vehicle and, therefore, the subsequent attempt to create a lien in favor of the bank was a nullity since no one can give a better title than he has in personal property unless some principle of estoppel is applicable. In concluding that the plaintiff bank acquired no enforceable security interest in the vehicle, the court rejected any claim of estoppel:

"He did what any prudent buyer would have done. After he took possession of the vehicle and paid for the same, he relied on the dealer to secure the proper transfer of title, and this by law is the dealer's duty." 239 So. 2d 621, 623.

Next, the court relied on section 9—307(1) of the Uniform Commercial Code to reach the same result:

"The normal operation of Section 679.9—307(1), supra, would protect a buyer of goods in the ordinary course of business from a security interest created *before the sale to the buyer*. That section has, however, been interpreted to protect such a buyer who takes possession of a motor vehicle against one claiming a security interest therein which a dealer attempted to create *after the sale to the buyer* and in a situation such as the present where the dealer had retained the title certificate for the ostensible purpose of obtaining a new certificate registering the vehicle in the buyer's name. See *Weisel v. McBride*, 1960 [*sic*], 191 Pa. Super. 411, 157 [*sic*] A.2d 613, and *Main Invest. Co. v. Gisolfi*, 1964, 203 Pa. Super. 244, 199 A.2d 535. We agree with this interpretation of the section as being consistent with the language as well as the purpose of the enactment." (239 So. 2d 621, 623-24.)

Having so concluded, the court directed the trial court to order the plaintiff bank to deliver the title certificate to the defendant.

After reviewing the *Stroman* decision as well as the Pennsylvania cases cited therein, *Weisel v. McBride* (1959), 191 Pa. Super. 411, 156 A.2d 613, and *Main Investment Co. v. Gisolfi* (1964), 203 Pa. Super. 244, 199 A.2d 535, we are compelled to conclude that the interpretation of section 9—307(1) and the result reached in those cases is the correct one and precludes entry of summary judgment for plaintiff as a matter of law. On the other hand, we cannot grant judgment for the appellants on the record before us. There is a genuine issue of material fact to be decided upon remand as to whether or not appellants qualify as buyers "in ordinary course of business" so as to be entitled to the protection afforded purchasers under section 9—307(1) (Ill. Rev. Stat. 1979, ch. 26, par. 9—307(1)). Furthermore, assuming appellants are otherwise entitled to the protection of section 9—307(1), the factual question arises as to whether they should for some reason be estopped from asserting their superior position as buyers.

Plaintiffs, also, have not pointed to any statutory or case law which would support their theory of priority and seem to rely on the general proposition that "[a] certificate of title issued by the Secretary of State is prima facie evidence of the facts appearing on it." (Ill. Rev. Stat. 1979, ch. 95½, par. 3—107(c).) However, neither of the titles involved herein was issued by the Illinois Secretary of State (they were Florida titles) and, furthermore, this provision does not govern priorities.

■■ While plaintiff asserts that the Illinois Vehicle Code places upon the owner the responsibility for applying for and securing title, we do not so interpret the law. Although section 3—101 of the act states the general rule that "every owner of a vehicle which is in this State and for which no certificate of title has been issued by the Secretary of State shall make application to the Secretary of State for a certificate of title of the vehicle," (Ill. Rev. Stat. 1979, ch. 95½, par. 3—101), section 3—104(b) more specifically provides:

> "If the application refers to a vehicle purchased from a dealer, it must contain the name and address of any lienholder holding a security interest created or reserved at the time of the sale and the date of his security agreement and be signed by the dealer as well as the owner, and *the dealer must promptly mail or deliver the application to the Secretary of State.*" (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 95½, par. 3—104(b).)

Therefore, we are unpersuaded by plaintiff's argument that appellants have somehow made defendants their agents for purposes of obtaining title and cannot now complain of the failure of their agents. Also, this argument misses the point. Although the perfection of security interests in vehicles for which certificates of title are required is controlled by chapter 3, article II of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 3—201 *et seq.*) (*American National Bank & Trust Co. v. Mar-K-Z Motors & Leasing Co.* (1974), 57 Ill. 2d 29, 32, 309 N.E.2d 567; *Peterson v. Ziegler* (1976), 39 Ill. App. 3d 379, 382, 350 N.E.2d 356), priority of competing security interests is governed generally by the Uniform Commercial Code provisions (Ill. Rev. Stat. 1979, ch. 26, par. 1—101 *et seq.*). Stated differently, while we recognize that the provisions of chapter 3, article II of the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 3—201 *et seq.*) prevail over the provisions of the Uniform Commercial Code—Secured Transactions (Ill. Rev. Stat. 1979, ch. 26, par. 9—101 *et seq.*) in case of a conflict (Ill. Rev. Stat. 1979, ch. 26, par. 9—203(4)), we do not consider those provisions to be in conflict in the present case. See *Stroman v. Orlando Bank & Trust Co.* (Fla. App. 1970), 239 So. 2d 621, 624.

Accordingly, this cause is reversed and remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.