**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Patrick D. ROTHERHAM,**
**Defendant–Appellant.**

No. 87–1796.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1987.
Decided Jan. 11, 1988.

Mariann Rogge–Strubing, Pogge–Strubing Law Office, Springfield, Ill., for defendant-appellant.

Kenneth W. Rosenberg, Appellate Sec., Tax Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before CUMMINGS, CUDAHY and MANION, Circuit Judges.

CUDAHY, Circuit Judge.

This appeal involves competing claims to a 1979 Excalibur automobile. Appellant Patrick Rotherham claims he has a security interest in the car that should have priority over the government's tax liens. The Internal Revenue Service (the "IRS"), not surprisingly, disagrees. The district court found for the government. We affirm.

I.

The factual setting is rather complex. We will only discuss those facts relevant to this appeal. The central character is Robert Edwards. In 1973, Edwards' mother conveyed some farmland to her son, retaining a life estate. In 1977, Mrs. Edwards passed away; Robert thereafter owned the land in fee simple. In 1980, the land was sold for $375,000. In December 1980, Edwards used $38,353 of the proceeds to buy a 1979 silver and black Excalibur automobile, the heart of this litigation. He placed title in the name of Bryan Briggs as trustee.

Unfortunately for Edwards, his mother's estate owed federal estate taxes of over $70,000. The estate failed to pay the tax when due. Under 26 U.S.C. § 6324(a)(2) (1982),[1] the tax was owed by Edwards and a lien automatically attached to the land. When the land was sold, a "like lien" attached to all Edwards' remaining property;

---

1. Section 6324(a) reads, in pertinent part:

(2) Liability of transferees and others.—If the estate tax ... is not paid when due, then the ... transferee ... who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value at the time of the decedent's death, of such property, shall be personally liable for such tax. Any part of such property transferred by (or transferred by a transferee of) such ... transferee ... to a purchaser or holder of a security interest shall be divested of the lien [upon the gross estate] and a like lien shall then attach to all the property of such ... transferee, ... except any part transferred to a purchaser or a holder of a security interest. 26 U.S.C. § 6324(a)(2) (1982).

so, he could not avoid the estate tax simply by transferring the land. *Id.*

Meanwhile, Edwards was running into more tax trouble on another front. In June 1981, the IRS assessed federal income tax, interest and penalties against Edwards. The IRS alleged an unpaid balance of almost $8,000 in 1978, 1979 and 1980 income taxes. On January 12, 1982, the government mailed Edwards notice of a federal income tax lien under 26 U.S.C. § 6321 (1982).[2] On January 24, the IRS filed notice of the lien with the Coles County Recorder of Deeds, pursuant to 26 U.S. C. § 6323 (1982).[3]

On February 12, Edwards, realizing his precious automobile was threatened by these liens, had Briggs transfer title to Edith Henry, Edwards' companion and roommate. Henry paid nothing for the vehicle; in fact, she did not consider herself owner of the car. Edwards retained possession and held the only set of keys. Edwards remained the principal user of the vehicle. He also continued to insure the car. The *only* incident of ownership not in Edwards was the title.

At this point Rotherham, the appellant, entered the picture. Some time prior to May 12, 1982, Rotherham was contacted by Mervin Beal, an attorney who had represented Edwards in obtaining several loans in the past. Beal was a longtime acquaintance of Rotherham. On May 12, Rotherham met with Edwards, Henry and Beal, and Rotherham made an $8,000 loan. Although Henry initially received the cash, she apparently passed it on to Edwards and never knew the amount of the loan. Rotherham believed he was making a loan to both Edwards and Henry.

In exchange for the money, Rotherham attempted to take a security interest in the Excalibur. Henry signed a blank piece of paper, which was later filled in to resemble a promissory note.[4] She also assigned title to Rotherham to secure the debt. Rotherham did not immediately file any record of this assignment with the Illinois Secretary of State.

On August 12, 1982, the IRS seized the car from Edwards. On August 13, Rotherham contacted the government and demanded release of the car to him. The IRS declined his request because he presented no evidence that he owned the car. Only at that point, the day *after* the seizure, did Rotherham file notice of his interest in the Excalibur with the Secretary of State. He applied for transfer of title to him as "owner" of the vehicle. The transfer was approved on August 24, twelve days after the seizure.

In 1984, the government brought this action asking the court to order foreclosure of the tax liens. Rotherham, still claiming an interest in the car, was named a defendant. After hearing testimony from the principal players, the district court found for the IRS, holding that notice of the income tax lien was adequate to bind Rotherham and that, in any event, the government prevailed with respect to both liens because Rotherham perfected his security interest, if at all, only after the IRS seized the car. We agree on both points and therefore affirm.

## II.

The mechanics of the statutes governing income tax liens and estate tax "like liens"

---

2. Section 6321 reads:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321 (1982).

3. Section 6323(a) reads, in relevant part:

> The lien imposed by Section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lien, or judgment lien creditor until notice thereof ... has been filed by the Secretary or his delegate.

26 U.S.C. § 6323(a) (1982).

4. Because of our disposition of the case, we need not determine whether the "promissory note" is a valid security agreement under the Uniform Commercial Code. *See* U.C.C. § 9–203(1), Ill.Rev.Stat. ch. 26, para. 9–203(1) (1985).

differ slightly. For clarity's sake, we discuss each item in turn, even though much of the income tax lien analysis applies equally to the estate tax lien.

■ The priority system of the federal income tax lien provisions is fairly simple. Section 6321 gives the government a lien against "all property and rights to property . . . belonging to" the taxpayer. 26 U.S.C. § 6321; *see supra* p. 361 n. 2. The lien attaches to "every interest in property that a taxpayer might have." *United States v. National Bank of Commerce,* 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). We look to state law to determine the extent of the taxpayer's property interest. *See United States v. Rodgers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958); *see also Avco Delta Corp. Canada Ltd. v. United States,* 459 F.2d 436, 440 (7th Cir.1972).

Once state law determines the taxpayer's property interest, federal law governs the consequences of that determination. Specifically, under section 6323(a), the IRS must file notice of the tax lien or its interest may be defeated by the "holder of a security interest." 26 U.S.C. § 6323(a); *see supra* p. 361 n. 3. For purposes of both income tax liens and estate tax liens, the "holder of a security interest" is defined as one who has a prior choate security interest protected under local law against a subsequent judgment lien. 26 U.S.C. § 6323(h)(1) (1982).[5] It is worth noting that where the taxpayer has an interest in the property and the government files notice that complies, in form and content, with section 6323's requirements, that notice "shall be valid notwithstanding any other provision of law regarding form or content

of a notice of lien." 26 U.S.C. § 6323(f)(3) (1982).

The IRS filed its notice of tax lien on January 23, 1982. Rotherham's security interest attached, if at all, on May 12, 1982, almost four months later. Assuming the security interest attached,[6] and accepting for the moment appellant's argument that under Illinois law only attachment is necessary to prevail over a subsequent judgment lienholder,[7] appellant still loses if the car belonged to Edwards and the form and content of the notice met the statutory requirements.

■ Understanding this, appellant argues that the car belonged to Henry. The district court disagreed, and we will only reverse its factual findings if they are clearly erroneous. Fed.R.Civ.P. 52(a); *see Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed. 2d 518 (1985); *Bartsh v. Northwest Airlines, Inc.,* 831 F.2d 1297, 1306 (7th Cir. 1987). Under Illinois law, title is prima facie evidence of ownership. Ill.Rev.Stat. ch. 95½, para. 3–107(c) (1985). The district court found that there was sufficient evidence to override that presumption. *United States v. Edwards,* No. 84–2055, slip op. at 6 (C.D.Ill. Apr. 9, 1987). Edwards paid for the car, insured the car, had the only keys to the car, retained possession of the car at all relevant times and transferred title to Henry for no consideration shortly after receiving notice of the tax lien. Edwards testified that he transferred title to Henry because "there was tax problems; and Brian Briggs said I should kick this title around at the time." Record at 21. In fact, Henry specifically disclaimed any ownership interest in the car. Record at 53–54. These facts are uncontroverted.

---

**5.** Section 6323(h)(1) reads:

(h) *Definitions*—For purposes of this section and section 6324 [the estate tax lien]—
(1) Security interest.—The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law

against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.
26 U.S.C. § 6323(h)(1) (1982).

**6.** *See supra* p. 361 n. 4.

**7.** This argument, based on a strained reading of Illinois law, is discussed and rejected *infra* pp. 365–66.

They more than amply support the court's finding that Edwards owned the car.

██ Rotherham, however, argues that he never had notice that Edwards was the car's true owner. There are two answers to this contention. First, under section 6323(f)(3), where notice is properly filed it is valid "notwithstanding any other provision of law" governing the adequacy of notice. In other words, a filing that meets the tax lien statute's requirements is sufficient constructive notice regardless of any actual notice problems. Whether the filing gave actual notice to Rotherham is irrelevant; he is still bound by the tax lien.

██ Further, the district court found that "Rotherham had enough information to tie Edwards to the car." *Edwards*, slip op. at 7. This conclusion is based on weighing the credibility of conflicting testimony. We will not reject the finding unless clearly erroneous. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1512. The district court's conclusion finds support in the record. Rotherham entered into this transaction after being contacted by Edwards' attorney, Mervin Beal. Rotherham knew that Edwards, as well as Henry, wanted the money. Presumably Rotherham and Edwards set the amount of the loan, since Henry never knew the exact terms of the deal. Rotherham was present when Henry signed blank pieces of paper to be filled in by Edwards' attorney. He may have known Edwards insured the car. See Record at 92. Finally, he testified that when payment was overdue, he attempted to contact Edwards. Record at 107. These facts adequately support Magistrate Kauffman's factual finding that Rotherham had sufficient information to know Edwards owned the Excalibur. That fact reduces any "secret lien" concerns raised by filing in Edwards' name alone. Even if

the statute were to allow such an inquiry, the facts do not support Rotherham's contention that he lacked notice.

Moreover, even if we were to find the notice deficient in some respect, the government would still prevail if Rotherham failed to perfect his security interest in the Excalibur prior to the car's seizure on August 12, 1982. Under 26 U.S.C. § 6331(a) (1982), the IRS has the power, after notice of deficiency, to levy upon the taxpayer's property.[8] If Rotherham's security interest was unperfected prior to August 12, and if seizure foreclosed his opportunity to perfect that interest after August 12, then he loses regardless of his other arguments. Because this issue is the centerpiece of our estate tax "like lien" analysis, we turn now to that discussion.

### III.

██ The mechanics of the estate tax lien provisions differ somewhat from those governing the income tax lien. When a person dies and estate tax is not paid by the estate, a lien attaches to the decedent's gross estate. 26 U.S.C. § 6324(a)(1) (1982). To the extent the tax remains unpaid, the recipient of property included in the gross estate becomes personally liable for the tax, up to the value of the property received. 26 U.S.C. § 6324(a)(2); *see supra* p. 360 n. 1. The lien remains attached to that property in the hands of the recipient. *Id.* If the property is again transferred, a "like lien" attaches to *all* property belonging to the transferor. *Id.* That is precisely what occurred in this case. *See supra* p. 360.

██ Once the estate tax "like lien" attaches, the priority system differs from that governing income tax liens. The IRS cannot "perfect" its estate tax lien by filing notice or by notifying the taxpayer of the lien. To protect its interest, the government must levy upon the property. Until

---

**8.** Section 6331(a) reads, in relevant part:
(a) *Authority of Secretary or delegate—If* any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax ... by levy upon all property and rights to property ... belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.
26 U.S.C. § 6331(a) (1982).

the IRS makes such a levy under 26 U.S.C. § 6331, the taxpayer is free to sell or encumber the property. 26 U.S.C. § 6324(a)(2). The "like lien" attaches to the taxpayer's property "except any part transferred to a purchaser or a holder of a security interest." *Id.* As with the income tax lien, "security interest" is defined as a choate interest that "has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation." 26 U.S.C. § 6323(h)(1); *see supra* p. 362 n. 5.

■ On August 12, 1982, the IRS exercised its levy power by seizing the Excalibur. *See* 26 U.S.C. § 6331(b) (1982) ("The term 'levy' ... includes the power of distraint and seizure by any means.") Seizure, in effect, perfected the estate tax "like lien" and froze the rights of the parties as of that time. We must therefore examine the facts as of August 12, to determine whether Rotherham's interest was "protected under local law against a subsequent judgment lien arising out of an unsecured obligation." 26 U.S.C. § 6323(h)(1).

■ Rotherham did not attempt to file notice of his purported security interest with the Illinois Secretary of State until after the seizure. His claim, therefore, is based on the proposition that he was not required by Illinois law to file such notice in order to prevail over a subsequent judgment lien. We find that, even accepting all of appellant's factual contentions, Illinois law required him to file in order to perfect his interest as against a subsequent judgment lienholder.

We begin with the Illinois statutes, specifically the Illinois version of the Uniform Commercial Code (U.C.C.), Ill.Rev.Stat. ch. 26, para. 1–101 *et seq.* (1985). In general, the U.C.C. governs perfection and priority of security interests. *Cf.* Ill.Rev.Stat. ch. 26, para. 9–102 (1985) (scope of Article 9). Under section 9–301, "an unperfected security interest is subordinate to the rights of ... (b) a person who becomes a lien creditor before the security interest is perfected." Ill.Rev.Stat. ch. 26, para. 9–301(1)(b) (1985). As discussed above, under 26 U.S.C. §§ 6323 and 6324, a security in-

terest that is subordinate to a judgment lien is subordinate to a tax lien. Thus, if Rotherham's security interest was "unperfected" within the meaning of the U.C.C., his interest was subordinate to the tax liens.

■ The U.C.C. perfection provision states that the Illinois Vehicle Code governs requirements for perfection of security interests in motor vehicles. *See* Ill.Rev. Stat. ch. 26, para. 9–302(3)(b) (1985); *see also* Ill.Ann.Stat. ch. 26, para. 9–302 (Smith–Hurd 1974) (Illinois Code Comment) ("A security interest in an automobile ... must therefore be perfected in accordance with [the Illinois Vehicle Code].") The Vehicle Code, in turn, provides:

A security interest is perfected by the delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee.

Ill.Rev.Stat. ch. 95½, para. 3–202(b) (1985). If, as occurred in this instance, the application is not delivered within 21 days of the creation of the security interest, it is effective only upon delivery. *Id.* Rotherham's security interest was only perfected upon delivery, after August 12 (the date the IRS seized the car).

■ Having determined that his interest was unperfected as of August 12, we now look to the U.C.C. for the priority of that interest. *See Finance America Commercial Corp. v. Econo Coach, Inc.,* 95 Ill.App.3d 185, 190, 50 Ill.Dec. 667, 672, 419 N.E.2d 935, 940 (2d Dist.1981) ("Although the *perfection* of security interests in [motor vehicles] is controlled by [the Vehicle Code], *priority* of competing security interests is governed generally by the Uniform Commercial Code provisions.") (emphasis supplied) (citations omitted); *see also Peterson v. Ziegler,* 39 Ill.App.3d 379, 382–83, 350 N.E.2d 356, 360 (5th Dist.1976); Ill. Ann.Stat. ch. 26, para. 9–302 (Illinois Code Comment) (Smith–Hurd Supp.1987) ("The exemption of motor vehicles subject to the Illinois Vehicle Code from the filing requirements of the Uniform Commercial Code does not extend to other matters cov-

ered by the latter."). U.C.C. section 9–302 states that an unperfected security interest is subordinate to a judgment lien. Rotherham failed to perfect prior to August 12, 1982; therefore, his interest is subordinate to an August 12 judgment lien.

In opposition to this construction of the statutes, Rotherham makes a novel argument. In essence, his contention is that, because the U.C.C. refers to the Vehicle Code for perfection requirements for motor vehicle security interests, the Vehicle Code also governs priority battles among competing creditors with respect to motor vehicles. The Vehicle Code states that: "A security interest in a vehicle ... is not valid against subsequent transferees or lienholders of the vehicle unless perfected as required in this Act." Ill.Rev.Stat. ch. 95½, para. 3–202(a) (1985). In the Act's general definitional section, "lienholder" is defined as "[a] person holding a security interest in a vehicle." Ill.Rev.Stat. ch. 95½, para. 1–139 (1985). By negative implication from these provisions, Rotherham asks us to hold that he was not required to perfect his security interest in order to prevail over a judgment lien, because a judgment lienholder is not a "lienholder" under the Vehicle Code.

There are several answers to this argument. First, as noted above, the Illinois cases and the commentary to the Illinois U.C.C. make clear that the Vehicle Code only governs *perfection* of security interests in motor vehicles; the U.C.C. governs *priority* of those interests. *See Finance America*, 95 Ill.App.3d at 190, 50 Ill.Dec. at 672, 419 N.E.2d at 940; *Peterson*, 39 Ill.App.3d at 382–83, 350 N.E.2d at 360; Ill.Ann.Stat. ch. 26, para. 9–302 (Illinois Code Comment) (Smith–Hurd Supp. 1987). Second, this court has held that a bankruptcy trustee who, like the IRS under the tax lien statutes, has the priority of a judgment lienholder, prevails over a security interest unperfected under the Vehicle Code. *In re Keidel*, 613 F.2d 172, 173 (7th Cir.1980); *See also Community Bank v. Meister Bros., Inc.*, 12 Ill.App.3d 1004, 1007, 299 N.E.2d 589, 592 (3d Dist. 1973). The *Keidel* court did not address the argu-

ment Rotherham makes here, but its holding is consistent with the Illinois case law and our resolution of this case.

Third, Rotherham's argument is based on the notion that Vehicle Code section 3–202(a) is inconsistent with U.C.C. section 9–301(1)(b), which states that a judgment lienholder prevails over an unperfected secured creditor. This apparent inconsistency is illusory. The provisions do not necessarily conflict; instead, it is possible that they are cumulative. The Vehicle Code section only says that one must perfect to prevail over transferees or "lienholders." Accepting Rotherham's contention that "lienholder" does not include judgment lienholders, that means the section is *silent* as to the rights of judgment lienholders. Given that silence, it is natural to refer back to the U.C.C., which is *not* silent on the question. *See Finance America*, 95 Ill.App.3d at 190, 50 Ill.Dec. at 672, 419 N.E.2d at 940.

Finally, even if we were to accept that section 3–202(a) governs this priority battle, and that the definition of "lienholder" must exclude the IRS, Rotherham would probably still not prevail. If the IRS is not a "lienholder," it is most likely still a "transferee" of the car. The statute does not define "transferee," but there is no evidence that the legislature sought to exclude involuntary transfers from the section's scope. Indeed, a broad definition of "transferee" removes any potential inconsistency between Vehicle Code section 3–202(a) and U.C.C. section 9–302. Under this construction, there was no need to include judgment lienholders in the definition of "lienholder," since a lienholder who levies on the property is a "transferee" of the property. *Cf. Black's Law Dictionary* 1342 (5th ed. 1979) ("transfer" includes involuntary conveyance of property). We need not rely upon this argument; the other reasons we have noted are more than sufficient to justify our rejection of appellant's statutory interpretation.

## IV.

We agree with the district court that Rotherham's security interest, to the ex-

tent it attached at all, was subordinate to the government's estate tax and income tax liens on the Excalibur, because Rotherham failed to perfect his security interest prior to the IRS's seizure of the car. Further, the income tax lien prevails over Rotherham's alleged security interest for the additional reason that the lien was properly filed before Rotherham's interest attached. We therefore affirm the district court's order in all respects.

AFFIRMED.