# WILLIAM A. TINNEY

## *v.*

# ELIZABETH WOLSTON *et al.*

1.  JUDGMENT LIEN — *not affected by subsequent action of the judgment debtor.* A person who gives another a valid lien upon land, or against whom the law has created a lien, is unable, by any act of his, short of discharging it, to impair or affect it.

2.  So a judgment creditor, who has obtained a lien upon the land of his debtor, has a right to enforce his lien precisely in the condition he obtained it, and to sell the property as the debtor held it at the time the lien was created.

3.  SAME — *effect of the lease taken by the judgment debtor upon his own land, as to a purchaser under the judgment.* The taking of a lease by a judgment debtor upon his own land, from one who has no title, after the lien of the judgment has attached, and thereby acknowledging the lessor to have the superior title, will not estop the judgment creditor, or those acquiring their rights by purchasing under the judgment, from disputing the title of such lessor.

4.  So a purchaser under such judgment would not be liable to pay the rent which might be reserved in the lease given under such circumstances, and agreed to be paid by the judgment debtor.

WRIT OF ERROR to the Circuit Court of Tazewell county; the Hon. JAMES HARRIOTT, Judge, presiding.

This was an action of covenant, brought by Elizabeth Wolston and Abraham Wolston, in the Tazewell Circuit Court, to the June Term, 1865, against William A. Tinney. The declaration was on the covenants contained in a lease made by plaintiffs to one Richard Snell, of certain lots in the city of Pekin, for the term of the natural life of Elizabeth; that Snell covenanted to pay her $300 per annum in monthly installments as rent for the premises; that Snell entered upon the term; and that afterward Benj. S. Prettyman, by assignment, became the owner and possessed of the term, and entered into the possession of the premises thereunder.

That Prettyman assigned and transferred the term to defendant, and that he entered into possession under the term and

had held the same; that plaintiffs had kept and performed all of their covenants, but that defendant had failed to keep the covenants entered into by Snell, and which he, by the assignment of the term to him, had become liable to perform, and has failed to pay the rents which had accrued under the lease.

Defendant filed five special pleas, to the first three of which plaintiffs filed a general demurrer. The court sustained the demurrer to each of the pleas, and defendant withdrew the fourth and fifth pleas, and abided by the first, second and third. The court thereupon heard evidence, and assessed the damages at the sum of $2,121.58, and rendered judgment against defendant for that amount. Defendant brings the case to this court, and assigns the judgment of the court below in sustaining the demurrer to his pleas, as error.

Mr. B. S. PRETTYMAN, for the plaintiff in error.

Mr. E. N. POWELL and MR. J. K. COOPER, for the defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of covenant, brought by Elizabeth Wolston and Abraham Wolston, against William A. Tinney, on a lease for the recovery of rent claimed to be due. The declaration contained two counts. In the first, it is averred, that plaintiffs, on the 7th day of April, 1857, leased the premises, out of which it is claimed the rents issue, to one Richard H. Snell, for and during the term of the natural life of Elizabeth Wolston, at a yearly rent of $300, payable in equal monthly installments; that Snell entered into the possession of the premises under the lease; that, on the 24th day of March, 1858, Snell assigned and transferred his lease to Prettyman, who also entered into possession of the premises, under the lease; that, on the 27th day of May, 1859, Prettyman assigned and transferred the lease to

defendant, who in like manner entered into possession, and had since that time used and occupied the premises, under the lease; that he had failed to keep and perform the covenants contained in the lease, but had broken the same by failing to pay the rent, or any part thereof, which had accrued since he had entered; nor had the same or any part thereof been paid by any one. The second count is substantially the same as the first.

Among others, defendant filed three pleas. The first of these avers, that, on the 8th day of April, 1834, one Thomas Snell, Sr., owned the premises in fee. That he, on that day, executed a mortgage on the same to Guest & Rockey, to secure the payment of three thousand six hundred and eighty-two dollars and ninety-six cents, which they assigned to Richard H. and Thomas Snell, Jr. That they foreclosed the mortgage and became the owners of the premises, Richard H. being the purchaser, but Thomas, the owner of one undivided half, in equity; and that Richard took possession for their use.

That, being indebted to Ludwig & Needler, they on the 8th of September, 1845, recovered a judgment against Richard and Thomas Snell, for $254.39, in the Tazewell Circuit Court. That, on the 25th of November, 1845, an execution was issued on the judgment, and levied on the premises, but was returned without sale of the property. Afterward, an execution was issued on the same judgment, and on the 18th of March, 1851, the premises were sold thereunder, while Snell was still in possession, and Prettyman became the purchaser, and afterward received a sheriff's deed therefor, on the 19th of June, 1852.

That Prettyman, on the 3d of July, 1852, sold the premises to James M. Ruggles, who afterward, on the 22d of October, 1855, reconveyed the premises to Prettyman. That he demanded the possession of the premises of the Snells, who surrendered it to him as the owner in fee, and not otherwise. That Prettyman, on the 24th day of May, 1859, conveyed the premises to defendant below.

That, on the 7th day of February, 1851, the Wolstons had no title to the premises which they could lease, but that it

belonged to Richard H. Snell, at law, but Thomas owned an undivided half in equity, all of which was known to plaintiffs below. That the lease was executed by the parties for the purpose of hindering, delaying and defrauding Ludwig & Needler in collecting their debt.

The second plea is substantially the same as the first. It, however, is different, in so far as it avers that Thomas Snell, Jr., and Richard Snell were the joint owners of the property, at the time Ludwig & Needler sold it under execution. The third is substantially the same, except it avers that Richard H. Snell was the sole owner. A demurrer was filed to these several pleas, which was sustained by the court. And, thereupon, defendant below abided by these pleas, and withdrew the others, and the court heard evidence and assessed the damages at the amount of rent remaining unpaid, with interest on the various installments, and rendered judgment for the amount thus found. To reverse that judgment the record is brought to this court by writ of error.

The question presented by this record is the sufficiency of these pleas. It is urged in support of the judgment, that the pleas fail to answer the declaration,— that they neither traverse nor confess and avoid the cause of action it sets forth. That it avers that the Snells took a lease for the life of Mrs. Wolston, and that they held under that lease, until they sold to Prettyman, and that he in like manner held under the lease, until he transferred it to plaintiff in error, who had ever since held under the lease. That these averments are not traversed. And that if they are true plaintiff in error is estopped from showing that he is the owner of the premises in fee. That although Prettyman did own the fee, still, when he purchased the lease he became liable to perform its covenants, precisely as if he had been a stranger to the title. Or if Richard Snell owned the fee, and took a lease of Mrs. Wolston for her life, and Prettyman purchased of him, he took it subject to the lease. That in either case his grantee stands in the same position.

It is true, that these pleas do not traverse the averments in the declaration. But the new matters set up in these pleas we

think, informally it may be, in effect confess and avoid the averments of the declaration. The law always infers that the owner of the fee has the right to hold and possess the property, as against all persons. When he claims possession or is in possession, being the owner of the fee, he is presumed to be entitled to hold it, and is liable neither to rent nor service to any person. To rebut that presumption, it must be shown that there is an outstanding lesser estate, consistent with the fee, to prevent his recovery of the possession under his fee. Or if in possession, he will be presumed to hold under his fee, until it is shown that he holds under an estate adverse to and not subordinate to his fee. If an heir or his grantee were to enter upon the premises assigned to the widow for her dower, the fee could not be set up as a bar to a recovery. Or if the heir or his grantee were to lease the portion assigned to the widow for her dower, they could not rely upon the fee simple title to defeat a recovery of rent under the lease. Or if the owner of the fee, in his folly, were to take a lease on his own premises, from a stranger having no title, it might be that he would be estopped from setting up his fee as a defense to a recovery of the rent under the lease.

But, in this case, it does not appear that Mrs. Wolston holds this property as dower, in the estate of plaintiff in error. Nor does it appear that Prettyman, who purchased the fee at the sheriff's sale, took such a lease of Mrs. Wolston. But it is insisted, that, as the judgment debtor did take such a lease, when Prettyman became the purchaser under the execution, although he acquired the fee, he took it incumbered with the lease for life, and liable to pay the rents reserved in the lease.

There is no rule of law better recognized than that a person who gives to another a valid lien, or against whom the law has created a lien, is unable, by any act of his short of discharging it, to impair or affect it. Nor can he, in conjunction with others, accomplish such a result. When Ludwig and Needler, therefore, obtained their judgment against the Snells, and thereby acquired a valid lien on these premises, the Snells could not, by sale, by mortgage, by leasing it, or otherwise, but

by payment or satisfaction of the judgment, remove, impair, or in the least alter the lien. The judgment creditors had a right to enforce their lien precisely in the condition they obtained it, and to sell the property as the judgment debtors held it at the time the lien was created. It is to be understood, that it would be different with taxes and other government burdens, as they are liens paramount to all others.

Then did the Snells, after Ludwig & Needler obtained their judgment, by acknowledging that the Wolstons had a superior title to theirs, estop their judgment creditors, or those acquiring their rights by purchasing under execution, from disputing that title? For that is the effect of the position held by defendants in error. If the Snells might incumber this property by taking a lease for the life of the lessor, they could have taken one for nine hundred years. And instead of agreeing to pay three, they might have agreed to pay ten thousand dollars per annum. And if the judgment creditor, by purchasing the property, became liable to pay the rent, then a most effectual means would have been adopted by which judgment debtors could prevent a sale of their lands. They would only have to find some person willing to execute a lease for so large a rent as to render the property valueless, to prevent a sale by the creditor. And it would not matter that the lessor had no title, if, by levying under the execution, the purchaser was estopped from asserting the title upon which the lien attached. It is most confidently believed that such a doctrine has never been asserted, and it is not even probable that it will by any court of last resort.

If a judgment debtor, after the lien of the judgment has attached, incumbers the property, it is destroyed by a sale under the judgment, unless a redemption is had in the mode prescribed by the statute. If the land is subsequently charged with a mortgage, judgment, sale or otherwise by the judgment debtor, it is freed from such a charge or incumbrance by a judicial sale and conveyance under the prior lien. And we are at a loss to see upon what principle a judgment debtor can charge the property with a valid rent, to the exclusion of a

prior judgment lien.  Such an incumbrance has no greater claims to consideration than the others, and it must be held, that they do not affect the prior lien of the judgment; and that the lease so made, like a mortgage or judgment junior to the lien, is an extinguished lien, when the paramount lien has ripened into a title.

If the Wolstons have a valid outstanding title, they may not be estopped, by making the lease, from asserting it against the fee simple title which Prettyman and his grantee have set up under the sheriff's sale.  Prettyman did not acquire the lease by his purchase, nor did he become liable to its terms and conditions.  If Mrs. Wolston has dower in the premises, or if she has paramount title, she may assert her title as though the lease had never been given.  But she must establish her title, or show that Prettyman or those holding under him are in possession under her title.  The pleas allege that Prettyman and his grantee entered under the fee which he acquired under the execution sale, and the demurrer admits the truth of this averment.  If, however, he did enter under the lease, and not under his fee simple title, then it would be otherwise.

It was supposed that this case is similar to one previously before this court, in which Prettyman was plaintiff in error, and the Wolstons were defendants in error.  The question presented in that case, on the pleadings, was, whether Prettyman, as assignee of a lease for life, and in possession under the lease, was liable to pay the taxes accruing on the premises, or whether that duty devolved upon the owner of the life estate, under whom he held.  We regard the two cases as being entirely dissimilar.  And that case does not control the decision of this.  The court below erred in sustaining the demurrer to these pleas, and the judgment of the court below is therefore reversed, and the cause remanded.

*Judgment reversed.*