## Hervey N. Richey v. L. W. Ford.

1. Demand—*In Replevin.*—Where the possession of property is tortious no demand for possession of it by a plaintiff in replevin is necessary before bringing suit.

2. Landlord and Tenant—*Right to Hold a Tenant's Crop.*—Where a landlord has expended money or has become obligated to pay money for twine, or for harvesting a crop, or for any other necessary purpose in saving the crop, and has possession of it, under an agreement with other lien holders, he will be entitled to hold it until he is repaid for what he has paid out or has become obligated to pay, and if under such circumstances, a mortgagee takes the crop by virtue of his mortgage without consent of the landlord, the taking is tortious, and the landlord is entitled to recover his possession of it without first demanding the property.

3. Landlord's Lien—*Superior to Lien of a Chattel Mortgage.*—The lien of a chattel mortgage upon growing crops is inferior to the lien of the landlord for his rent.

Replevin.—Trial in the Circuit Court Crawford County; the Hon. Edmund D. Youngblood, Judge, presiding. Verdict and judgment for defendant by direction of the court; appeal by plaintiff. Heard in this court at the February term, 1899. Reversed and remanded. Opinion filed September 5, 1899.

Hervey N. Richey and Maxwell & Jones, attorneys for appelllant.

Callahan, Jones & Lowe, attorneys for appellee.

Mr. Justice Bigelow delivered the opinion of the court.

This is an action of replevin brought by appellant against appellee before a justice of the peace of Crawford county, to recover possession of 163½ bushels of wheat, and was appealed to the Circuit Court of the county where a trial was had, and at the close of plaintiff's evidence, on motion of appellee, the court instructed the jury to find the defendant not guilty, which was done, and the court rendered judgment against the plaintiff for costs, and that he return the property to the defendant.

From this judgment plaintiff appealed to this court and assigns a number of errors, the principal of which is the giving of the instruction taking the case from the jury.

The wheat was raised on appellant's farm by one Fowler; appellant furnished the seed, and was to receive for the seed and rent one-half of the crop at the machine.

Some time after the crop was put in Fowler mortgaged his half to appellee to secure a debt of $130.

The uncontradicted evidence shows that about the time the wheat was ready for harvesting appellant learned that Fowler would not be able to get the wheat cut and saved, and so informed appellee, whereupon an agreement was made between appellant and appellee by which appellant should arrange to have the wheat cut and saved, and should purchase Fowler's share, and, after deducting the expense of harvesting and threshing the crop, from Fowler's share of it appellant should pay the balance of the money remaining to appellee.    Thereupon appellant arranged with parties to cut the wheat and purchased the necessary twine, paying a part of the cost of it, and became obligated to pay the balance, and agreed with Fowler for the purchase of his share of the wheat, to be delivered at Flat Rock, for which appellant was to pay the market price at Flat Rock or Robinson.

The wheat was threshed soon after it was cut, and while Fowler's share was being delivered at appellant's warehouse at Flat Rock, appellee, without offering to refund to appellant the money he had paid out, and without settling the bills for which appellant had become liable in saving the wheat, placed his chattel mortgage in the hands of one Parker, who was a constable, and directed him to take possession of the wheat, and he testified he did so, and at the time he took it, appellant informed him that he would replevin the wheat.

The evidence shows that the market value of the wheat at Flat Rock, and at Robinson, was sixty-eight cents per bushel, and that on the trial of the case before the justice, appellant tendered into court the balance of the money the wheat came to, after deducting the cost of securing it, which tender appellee refused to accept.

But for the statements of appellee's counsel in their brief it would not be easy to understand on what theory of the

case the instruction taking it from the jury was asked and given. They state their views of the matter as follows:

"There is no evidence showing or tending to show, that appellee ever, at any time, had the possession of the wheat, or any portion of it.

The evidence shows that if any one other than appellant had possession of the wheat it was Alfred Parker, and not appellee.

Whatever control or possession Parker had of the wheat was under the chattel mortgage and was lawful, so that replevin could not be brought until after the plaintiff had demanded and Parker had refused to surrender the wheat.

If it should be held that the possession of Parker was also the possession of appellee, such possession is shown by the evidence to have been lawful. Yet there is no evidence, and not even a pretense, that plaintiff ever, at any time before the commencement of the suit, made any demand either of appellee or Parker for the wheat."

Parker, in taking the wheat, was not acting in his official capacity as constable, but was the agent of appellee, and acting under his direction, and the possession of Parker was the possession of appellee; and, besides, it appears from the evidence that appellee was present when Parker took possession of the wheat, and while Parker did not put it in appellee's barn, as appellee requested, yet the reason it was not done is given by Parker as follows:

"I told him to get his teams, and we would haul it out in a few minutes, but it was not done, so as to make no extra expense, as Richey said he was going to replevy it at once."

We think the evidence was sufficient to have warranted the jury in finding that appellee had possession of the wheat, if that question had been submitted to them, as it should have been.

Counsel for appellee further say, "If appellant had any cause of action, it was against Parker and not against appellee."

We infer, from the questions asked the witness Parker by the court, that the court agreed with the counsel in their view of both the law and the facts, or it would not have given the instruction.

The authorities on which counsel seem to rely in support

of their contention, that the possession of the wheat by Parker was not sufficient to warrant bringing replevin against appellee, are Gaff v. Harding, 48 Ill. 150; Richardson v. Reed, 4 Gray, 441; Hall v. White, 106 Mass. 600, and Boyden v. Frank, 20 Ill. App. 169.

In Gaff v. Harding, Gaff, who was sheriff of Livingston county, levied an execution against one Dodwell, upon property of Dodwell which he had mortgaged to Harding, and Dodwell executed a delivery bond to the sheriff, with Harding as security, and the sheriff left the property in possession of Dodwell. Harding then brought replevin against the sheriff for the possession of the property. The sheriff, after he had received a delivery bond, had no possession or control of the property, and hence the court held that replevin would not lie against him.

An examination of the other cases will show their facts to be as far away from the facts of this case as are the facts in Gaff v. Harding, and in neither case was the property in the possession of an agent of the person against whom the action of replevin was brought.

In Allen v. Crary, 10 Wendell, 349, it was held that a plaintiff in an execution, who directed the officer holding the writ to levy it upon specific articles of property, could be sued in replevin for the possession of the property. It is true, the Massachusetts cases do not seem to be in harmony with the rule laid down in Allen v. Crary, but it is unnecessary for us to discuss the question which is nearer right, since the facts in none of the cases show that the person who had the actual possession of the property was acting merely as the agent of the party sued.

We are of opinion the suit was property brought against appellee.

Appellee's possession of the wheat, personally or by his agent, was either tortious or rightful. If it was tortious, no demand for possession of it by appellant was necessary, and if it was rightful, any demand appellant could have made would have availed him nothing.

Appellee knew that his mortgage lien on Fowler's share

of the growing wheat was inferior to appellant's lien for his rent, and he knew, or was informed by appellant, that because of Fowler's poverty there was almost certain danger that his security would at least become very much impaired. The note secured by the chattel mortgage was not due, and under such circumstances it was that the agreement was entered into, that appellant should arrange for harvesting and saving the wheat; Fowler's share of it, should by Fowler's consent, be sold on the market (for that is what the agreement really was), and from the proceeds of the sale the expenses of saving the wheat were to be first paid and the balance of the money paid to appellee on his mortgage. This was but a foreclosure of appellee's mortgage, at his request and by the mortgagor's consent, without expense to the mortgagee, and in our opinion was not such a sale of the property as is contemplated by Section 7 of Chapter 95 of the Revised Statutes. That section, in our opinion, contemplates such a sale of the property as would in some way injure or jeopardize the mortgagee's interest in the property, and not a sale that would benefit him and which he was instrumental in having made.

If the law embraces all sales of mortgaged personal property, and appellee's counsel are correct in their contention that all sales of property by the mortgagor without the written consent of the mortgagee are absolutely void, then the unfortunate debtor who contemplates making an assignment of his property for the benefit of his creditors, if a portion or all of his chattel property is mortgaged, is debarred from doing so, without the written consent of the mortgagee or mortgagees, since an assignment is a sale of the thing assigned; and, should he make an assignment without such consent, it would be declared void by the courts.

What appellant did, by the consent and agreement of appellee, is what would have been done had either appellant or appellee, or both, petitioned a court of chancery for the appointment of a receiver to harvest and save the crop because of the inability of the tenant to save it; and shall it be said that all of the parties interested in the crop might

not do what a court of chancery would have done for them? We are of the opinion that the proper thing to have done under the circumstances was just what seems to have been done.

The question whether the sale of the wheat to appellant was complete, so as to vest the title in him, was a question of fact to be found by the jury, under proper instructions.

But if the sale should be held void the agreement between appellant and appellee as to cutting and saving the wheat was perfectly valid, and if appellant had expended money or had become obligated to pay money for twine, or for cutting the wheat, or for any other necessary purpose in saving the crop, and had possession of the wheat, under the agreement he was entitled to hold it until he was repaid for what he had paid out or had become obligated to pay, and if, under such circumstances, appellee or his agent, Parker, took the wheat from him without his consent, the taking was tortious and appellant was entitled to recover possession of it again without first demanding the property.

The giving of the instruction was error, and in consequence, the judgment is reversed and the cause remanded.