EDWARD DWYER *et al.*, Ex'rs of the Estate of John J. Dwyer, Deceased, Plaintiffs-Appellees, *v.* COOKSVILLE GRAIN COMPANY *et al.*, Defendants—(McLean County Bank, Defendant-Appellant).—EDWARD DWYER *et al.*, Ex'rs of the Estate of John J. Dwyer, Deceased, Plaintiffs-Appellees, *v.* COOKSVILLE GRAIN COMPANY, Defendant-Appellant—(McLean County Bank *et al.*, Defendants).

Fourth District   Nos. 4—82—0848, 4—83—0008 cons.

Opinion filed September 8, 1983.

Thomas M. Barger III, of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellant McLean County Bank.

George L. Chesley, of DePew, Grimes, Chesley & Wilson, of Bloomington, for appellant Cooksville Grain Company.

Don C. Hammer, of Hayes, Schneider, Hammer & Miles, of Bloomington, for appellees.

JUSTICE MILLS delivered the opinion of the court:

Landlord's *crop lien* versus bank's *security interest*.

Which comes first?

We will not presume to overrule 110 years of our supreme court's settled law!

The *crop lien* takes precedence.

## THE FACTS

In February of 1981, Edward Dwyer°leased 300 acres of farm property to Robert Morefield for $60,000. One week later, Morefield borrowed $24,000 from the McLean County Bank in order to purchase a new combine to farm the rented property. To secure the loan, Morefield entered into a security agreement with the bank, giving the bank a security interest in the crops grown on the property. In accordance with article 9 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 9—101 *et seq.*), the bank perfected its security interest in the crops by filing a financing statement with the recorder of McLean County.

In mid-June, Morefield began planting the crop on the Dwyer farm and in late fall he delivered the harvested crops to the Cooksville Grain Company. As payment for the crops, Cooksville delivered a check to Morefield in the amount of $72,155.16, payable jointly to Morefield and the bank. Morefield delivered the check to the bank, the bank deducted $29,655.16 to apply to Morefield's obligation, and then credited Morefield's checking account with the balance of $42,500.

After learning that the crops had been sold and realizing that the proceeds had not been used to pay the $60,000 in rent due, Dwyer filed a complaint against Morefield, the bank, and Cooksville. Count I of the complaint alleged that Cooksville had wrongfully converted the crops; count II alleged that the bank had wrongfully converted the proceeds from the sale of the crops; and count III alleged that Morefield and the bank had conspired to deprive Dwyer of the rent and to convert the crops.

After a great deal of procedural maneuvering by all of the parties, the trial judge entered an order granting a motion by Dwyer for summary judgment on counts I and II and granting a motion by the bank for summary judgment on count III. Judge Knecht then awarded Dwyer a $60,000 judgment against Cooksville and a judgment for $29,655.16 against the bank. The bank filed a motion for clarification, noting that Dwyer was damaged in the amount of $60,000 and asking the court to apportion the ultimate responsibility for payment of the

$60,000 judgment between Cooksville and the bank. Judge Knecht granted the bank's motion for clarification and ruled that he would apportion the responsibility for the payment of the total $60,000 judgment at a later date. Before that apportionment took place, however, both the bank and Cooksville appealed Judge Knecht's order granting Dwyer's motion for summary judgment.

We affirm and remand the cause to the circuit court for apportionment of the liability for the total $60,000 judgment between Cooksville and the bank.

The central issue in this appeal is whether a landlord's statutory crop lien for rent has priority over an article 9 security interest in proceeds from the sale of crops grown on the rented land. It does.

### The Landlord's Crop Lien

The landlord's crop lien for rent arises from section 9—316 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 9—316), which states:

> "Every landlord shall have a lien upon the crops grown or growing upon the demised premises for the rent thereof, whether the same is payable wholly or in part in money or specific articles of property or products of the premises, or labor, and also for the faithful performance of the terms of the lease. Such lien shall continue for the period of six months after the expiration of the term for which the premises are demised, and may be enforced by distraint ***."

The rule has long been established in Illinois that the landlord's crop lien is paramount to all other liens. (*Lillard v. Noble* (1896), 159 Ill. 311, 42 N.E. 844; *Wetsel v. Mayers* (1879), 91 Ill. 497; *Richey v. Ford* (1899), 84 Ill. App. 121.) The lien can be lost only by waiver or by failing to enforce it within the proper time. *Thompson v. Mead* (1873), 67 Ill. 395.

The bank, however, argues that although the landlord's crop lien may have been paramount before the adoption of the Uniform Commercial Code in Illinois, today the priority rules of the Code's article 9 govern all priority disputes including those involving the crop lien. As the bank points out, its perfected security interest would have priority over Dwyer's lien if the dispute is governed by article 9's priority rules. Article 9, however, cannot be applied when one of the conflicting interests is a landlord's crop lien. Article 9 expressly exempts both statutory and landlord's liens from its coverage.

THE SCOPE PROVISIONS OF ARTICLE 9

Section 9—102(2) of article 9 (Ill. Rev. Stat. 1981, ch. 26, par. 9—102(2)) states in part:

> "This Article [9] does not apply to statutory liens except as provided in Section 9—310." (Section 9—310 deals with liens for furnishing services or materials.)

And section 9—104 of article 9 (Ill. Rev. Stat. 1981, ch. 26, par. 9—104) entitled "Transactions Excluded From Article [9]" states:

> "This Article [9] does not apply
>
> \* \* \*
>
> (b) to a landlord's lien \* \* \*."

The drafters of article 9 could not have spoken more clearly. Article 9 does *not* apply to a landlord's statutory lien. This exemption has been recognized by the vast majority of the courts across our nation. See *Hartwell v. Hartwell Co.* (1979), 167 N.J. Super. 91, 400 A.2d 529; *Associates Financial Services of Texas, Inc. v. Solomon* (Tex. Civ. App. 1975), 523 S.W.2d 722; *National Investment Trust v. First National Bank* (1975), 88 N.M. 514, 543 P.2d 482; *Bates & Springer of Arizona, Inc. v. Friermood* (1973), 109 Ariz. 203, 507 P.2d 668; *Universal C.I.T. Credit Corp. v. Congressional Motors, Inc.* (1967), 246 Md. 380, 228 A.2d 463.

We are aware of only one case which supports the bank's position that the priority rules of article 9 should govern in a dispute involving a landlord's statutory lien. That case, *Peterson v. Ziegler* (1976), 39 Ill. App. 3d 379, 350 N.E.2d 356, is from our Fifth District. In *Peterson*, the court, faced with a priority dispute between a holder of an article 9 security interest and a landlord with a statutory lien, applied the priority rules of article 9.

Although the court in *Peterson* noted that a literal interpretation of section 9—104(b) would preclude applying any rule of priority from article 9 to the landlord's statutory lien, it went on to state, without citing any supporting authority:

> "The purpose of section 9—104(b), however, is only to indicate that article 9 does not govern the creation of a landlord's lien or the priorities between competing landlords' liens. In order for article 9 to be the comprehensive statute that it was meant to be on the subject of consensual security interests, article 9 must always supply a rule for determining the priorities between a consensual security interest and *any other kind of lien*." (Emphasis added.) 39 Ill. App. 3d 379, 385, 350 N.E.2d 356, 362.

We emphatically disagree. There is no need for this court—or any

court—to search for hidden purposes in the provisions of article 9 in order to determine its scope. The language of 9—104(b) and 9—102(2) is crystal clear—no part of article 9, including the priority rules, apply to a landlord's statutory lien. We expressly disapprove that portion of the *Peterson* opinion, where the court found otherwise.

■ In conclusion, we find that the adoption of article 9 in Illinois has not diminished the paramount nature of the landlord's crop lien. It still has superiority over all other interests, including those created under article 9.

Consequently, the trial court did not err when it granted Dwyer's motion for summary judgment.

Affirmed and remanded with directions to the circuit court to apportion the liability for the total $60,000 judgment between the bank and Cooksville.

WEBBER, P.J., and TRAPP, J., concur.