THE FIRST STATE BANK OF MAPLE PARK, Plaintiff-Appellant, v. THE De KALB BANK, as Trustee, *et al.*, Defendants-Appellees.

Second District Nos. 2—88—0165, 2—88—0178 cons.

Opinion filed October 26, 1988.

Wiley W. Edmondson and Charles F. Haverty III, both of Brady, McQueen, Martin, Collins & Jensen, of Elgin, and Krupp & Krupp, of De Kalb, for appellant.

Robert P. Carlson, of De Kalb, for appellees.

Joseph M. Ambrose, of Saint & Ambrose, P.C. of Bloomington, for *amicus curiae* Community Bankers Association of Illinois.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, the First State Bank of Maple Park, filed a complaint for replevin against the De Kalb Bank, as trustee, George Stratton, Mary Rita, Inc., and Mary R. Nelson. Plaintiff alleged that the De Kalb Bank, as trustee, and George Stratton (hereinafter defendants) had seized certain personal property under a landlord's distress warrant and that the seized property was plaintiff's collateral for a loan to Mary Rita, Inc., and Mary R. Nelson which was in default. Both plaintiff and defendants moved for summary judgment, seeking a declaration of priority over proceeds from the seized property which had been sold by agreement of the parties, yielding $18,684.13. The trial court granted defendants' motion for summary judgment and denied plaintiff's motion. Mary Rita, Inc., and Mary R. Nelson were defaulted and are not parties to plaintiff's appeal.

The following issues are raised on appeal: (1) whether there is any distinction between a landlord's lien on growing crops and his lien under a distress warrant on personal property other than crops for purposes of determining priority as against a security interest under article 9 of the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1985, ch. 26, par. 9—101 *et seq.*); (2) whether the priority rules of article 9 apply to a conflict between a landlord's lien under a distress warrant and an article 9 security interest; and (3) whether, under the appropriate pri-

ority rule, a landlord's lien under a distress warrant is superior to an article 9 security interest which is perfected before the distress warrant is levied upon.

Leave was granted to the Community Bankers Association of Illinois to file an *amicus* brief in support of plaintiff.

Plaintiff's complaint for replevin alleged that plaintiff made a loan to Mary Rita, Inc., and Mary R. Nelson to enable them to purchase equipment and inventory for a health club. On October 23, 1986, Mary Rita, Inc., and Mary R. Nelson executed a promissory note in the amount of $40,000. On that same date, these two parties executed a security agreement, assigning as collateral for the loan, among other things, machinery, equipment and inventory, then owned or after-acquired, situated at the Olympic Health Club in Sycamore, Illinois. On November 5, 1986, plaintiff filed a financing statement containing the same description of collateral as contained in the security agreement.

On March 4, 1987, Mary R. Nelson executed a further promissory note for $2,000 payable to plaintiff. Both notes were defaulted upon, with a balance of $28,048.96 owing on the October 23 note and a balance of $2,000 owing on the March 4 note as of May 12, 1987. On June 15, 1987, defendants executed a distress warrant and seized property of Mary Rita, Inc., listed in the distress warrant and claimed by plaintiff as collateral.

Plaintiff moved for summary judgment, and defendants thereafter moved for summary judgment. The trial court denied plaintiff's motion for summary judgment and granted defendants' motion holding that defendants were entitled to priority under their distress warrant over plaintiff's perfected article 9 security interest in spite of the fact that the perfection of plaintiff's security interest occurred prior to the creation, filing or service of, or any levy under the distress warrant by the defendants. The trial court held that in determining priorities between a landlord's lien under a distress warrant and a prior security interest, there is no distinction between a landlord's lien on crops and a landlord's lien on personal property other than crops. The trial court then concluded that this case was governed by *Dwyer v. Cooksville Grain Co.* (1983), 117 Ill. App. 3d 1001, 454 N.E.2d 357, where a landlord's lien on crops was held superior to an article 9 security interest.

Plaintiff contends on appeal that the trial court erred in finding no distinction between a landlord's lien on crops and a landlord's lien on personal property other than crops for purposes of determining priority as against a security interest under article 9 of the UCC. Plaintiff further argues that, recognizing that a landlord's general lien

on personal property under a distress warrant does not carry the same priority as a crop lien, defendants' lien is inferior to plaintiff's security interest under either the priority rules of article 9 of the UCC or under common law principles.

In support of the contention that a distinction must be drawn between a landlord's lien on crops and his remedy under a distress warrant, plaintiff notes that the two remedies are established under separate statutory provisions. The landlord's distress remedy arises under section 9—301 of the Code of Civil Procedure, which provides:

> "In all cases of distress for rent, the landlord, by himself or herself, his or her agent or attorney, may seize for rent any personal property of his or her tenant that may be found in the county where such tenant resides, and in no case shall the property of any other person, although the same may be found on the premises, be liable to seizure for rent due from such tenant." (Ill. Rev. Stat. 1985, ch. 110, par. 9—301.)

The landlord's remedy against crops specifically is set out in section 9—316 of the Code of Civil Procedure and states, in pertinent part:

> "Every landlord shall have a lien upon the crops grown or growing upon the demised premises for the rent thereof *** and also for the faithful performance of the lease." Ill. Rev. Stat. 1985, ch. 110, par. 9—316.

Early cases underscore the fact that the landlord's lien on crops is separate from his lien on other personal property and that the statute creating a lien on crops does not extend to other personal property. (*Herron v. Gill* (1884), 112 Ill. 247, 251; *Felton v. Strong* (1890), 37 Ill. App. 58; see also *Morgan v. Campbell* (1875), 89 U.S. 381, 22 L. Ed. 796.) With regard to a landlord's liens for rent, it was the intention of the legislature to make a distinction between agricultural products raised on the farm and the general personal property of the tenant in the county. *Morgan v. Campbell* (1874), 89 U.S. 381, 22 L. Ed. 796.

Plaintiff correctly notes that different rules apply with respect to the creation and priority of the two types of liens. The crop lien is a paramount lien which arises by operation of statute and does not depend upon the judgment of any court or the employment of any means for its enforcement. (*Lillard v. Noble* (1896), 159 Ill. 311, 317.) The landlord's lien in crops attaches from the time of the commencement of their growth. *Watt v. Scofield* (1875), 76 Ill. 261.

In contrast, the landlord's lien on personal property other than crops does not arise automatically, but requires the landlord to file a distress warrant with the circuit court. (Ill. Rev. Stat. 1985, ch. 110,

par. 9—302.) It is well established that the landlord's lien on personal property other than crops does not arise until the property is actually seized. According to *Powell v. Daily* (1896), 163 Ill. 646, 650, 45 N.E. 414: "[A landlord's] lien, other than his statutory lien upon crops grown or growing upon the premises devised, does not attach until after the goods have been levied upon under the distress warrant." See also *Peterson v. Ziegler* (1976), 39 Ill. App. 3d 379, 350 N.E.2d 356.

■ Defendants argue that in determining the priority between a landlord's lien and an article 9 security interest, no distinction should be made between a landlord's crop lien and a landlord's lien on distrained property. Defendants rely on the language of section 9—104 of the UCC (Ill. Rev. Stat. 1985, ch. 26, par. 9—104(b)), which states that article 9 "does not apply * * * to a landlord's lien." Defendants note that because this provision does not distinguish between the two types of liens, there is no distinction between the two types of landlord's liens for purposes of resolving priority disputes against article 9 security interests. We disagree. Section 9—104 merely governs the applicability of the UCC to landlord's liens. It does not by its language suggest that under whatever priority rule is applied in a dispute between a landlord's lien and an article 9 security interest, distinctions between types of landlord's liens are to be ignored, and defendants cite no other authority for any such proposition.

Having determined that the UCC does not eliminate distinctions between a landlord's crop lien and a lien under a distress warrant, we now turn to the question of whether, in view of section 9—104, conflicts between landlord's liens and article 9 security interests are governed by the priority rules of article 9. There is a split of authority in Illinois on this question. In *Peterson v. Ziegler* (1976), 39 Ill. App. 3d 379, 385, 350 N.E.2d 356, the Appellate Court for the Fifth District stated:

"The purpose of section 9—104(b), however, is only to indicate that article 9 does not govern the creation of a landlord's lien or the priorities between competing landlords' liens. In order for article 9 to be the comprehensive statute that it was meant to be on the subject of consensual security interests, article 9 must always supply a rule for determining the priorities between a consensual security interest and any other kind of lien."

However, in *Dwyer v. Cooksville Grain Co.* (1983), 117 Ill. App. 3d 1001, 454 N.E.2d 357, the Appellate Court for the Fourth District specifically rejected the holding in *Peterson*, stating that "[t]he language of 9—104(b) and 9—102(2) is crystal clear—no part of article 9,

including the priority rules, apply to a landlord's statutory lien." (117 Ill. App. 3d at 1005, 454 N.E.2d at 360.) The holding in *Dwyer* has been adopted by the Appellate Court for the Third District in *Farmers Grain & Supply Co. v. Skinner* (1987), 161 Ill. App. 3d 201, 514 N.E.2d 216.

█▄ We adopt the view of the Appellate Court for the Third and Fourth Districts that the UCC is inapplicable to priority conflicts between article 9 security interests and landlord's liens. The plain language of section 9—104(b) states that article 9 does not apply to landlord's liens. The UCC contemplates resort to principles of law outside the code in situations to which provisions of the code are not applicable. (See Ill. Rev. Stat. 1985, ch. 26, par. 1—103.) As the UCC, by its plain language, excludes from its coverage questions involving landlord's liens, non-UCC law should be applied.

█▄ Applying non-UCC principles, generally a lien which is first in time has priority (*Home Federal Savings & Loan Association v. Cook* (1988), 170 Ill. App. 3d 720, 724, 525 N.E.2d 151) and is entitled to prior satisfaction out of the property it binds. (51 Am. Jur. 2d *Liens* §52 (1970).) The rationale underlying the principle of "first in time, first in right" is that a lienor obtains rights in the charged property which reflect the state of title at the time the lien is created, and that, generally, a lienholder cannot acquire greater rights in the charged property than the lienee held. This is reflected in *Tinney v. Wolston* (1866), 41 Ill. 215, wherein it is stated that "[t]here is no rule of law better recognized than that a person who gives to another a valid lien, or against whom the law has created a lien, is unable by any act of his short of discharging it, to impair or affect it. Nor can he, in conjunction with others, accomplish such a result." (41 Ill. at 219.) The *Tinney* court then stated that "judgment creditors had a right to enforce their lien precisely in the condition they obtained it, and to sell the property as the judgment debtors held it at the time the lien was created." 41 Ill. at 220.

█▄ A landlord's lien under a distress warrant is not subject to any special priority in derogation of the general principle of "first in time, first in right." In *O'Hara v. Jones* (1867), 46 Ill. 288, it was stated that a landlord's statutory lien "may be enforced against *all but prior liens* and *bona fide* purchasers, without notice." (Emphasis added.) (46 Ill. at 291.) Furthermore, in *Rand, McNally & Co. v. Francis* (1897), 168 Ill. 444, 48 N.E. 159, it was held that where an assignee for the benefit of creditors takes possession before the levy of any distress warrant, the assignee's rights are superior to the landlord's. Further, where an execution is levied before any levy of the

distress warrant, the latter is subject to the prior lien. *Herron v. Gill* (1884), 112 Ill. 247, 252.

■■ Applying the principle "first in time, first in right" to the instant case, defendants had no lien until June 1987, when they seized the property pursuant to a distress warrant. (See *A. N. Kellogg Newspaper Co. v. Peterson* (1896), 162 Ill. 158, 161, 44 N.E. 411; *Powell v. Daily* (1896), 163 Ill. 646, 650, 45 N.E. 414; *Peterson v. Ziegler* (1976), 39 Ill. App. 3d 379, 385, 350 N.E.2d 356.) Plaintiff's security interest, securing payment of the October 23 note, had attached and was perfected by November 6, 1986, the date on which a financing statement was filed as required by sections 9—302 and 9—303 of the UCC. (Ill. Rev. Stat. 1985, ch. 26, pars. 9—302, 9—303.) Therefore, plaintiff's security interest is entitled to satisfaction prior to defendants' lien.

The judgment of the circuit court is reversed, and summary judgment is entered in favor of plaintiff.

Reversed.

NASH and WOODWARD, JJ., concur.