# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Ross*, 2015 IL App (2d) 130961

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF JAMES S. ROSS (Deceased), Petitioner, and ANITA ROSS PRUITT, Respondent and Petitioner-Appellee and Cross-Appellant (Holly Ross, Executor of the Estate of James S. Ross, Respondent-Appellant and Cross-Appellee). |
| District & No. | Second District<br>Docket No. 2-13-0961 |
| Filed<br>Modified upon denial<br>of rehearing | February 11, 2015<br><br>April 2, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The respondent's petition seeking to recover the child support arrearage due her from decedent was untimely under section 18-12(b) of the Probate Act and section 510(e) of the Marriage and Dissolution of Marriage Act; therefore, the trial court's grant of respondent's motion to reconsider its dismissal of her petition was reversed and the cause was remanded to the trial court with directions to enter a dismissal of the petition with prejudice. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 85-MR-111; the Hon. Rodney W. Equi, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

Counsel on
Appeal

Ramsey Senno, of Law Office of Anthony Abear, P.C., of Wheaton, for appellant.

Michael A. Cotteleer, of Law Office of Michael A. Cotteleer, of Galena, for appellee.

Panel                   JUSTICE BIRKETT delivered the judgment of the court, with opinion.
                        Justices Hutchinson and Zenoff concurred in the judgment and opinion.

## OPINION

¶ 1     Holly Ross, executor of the estate of James S. Ross (James, but collectively with Holly, the Estate), appeals from the trial court's judgment in favor of Anita Ross Pruitt (Anita) on Anita's petition for child support that James was ordered to pay Anita in the 1983 decree dissolving their marriage. We agree with the Estate that Anita's petition to collect the child support arrearage was untimely under section 18-12(b) of the Probate Act of 1975 (755 ILCS 5/18-12(b) (West 2012)). Therefore, we reverse the trial court's judgment.

¶ 2                              I. BACKGROUND

¶ 3     James and Anita were married in 1968 in Oak Park, Illinois. The marriage produced three children, with the youngest born in 1972. In 1982, James filed for dissolution of the marriage in Cook County circuit court case number 82-D-24518. In May 1983, a judgment of dissolution was entered in that case. Anita was awarded physical custody of the children, and James was ordered to pay her $300 monthly in child support. In 1985, on Anita's petition, the dissolution judgment was registered in Du Page County circuit court case number 85-MR-111.

¶ 4     In May 2008, James died from injuries suffered in a workplace accident. In April 2012, Anita filed in case number 85-MR-111 a "petition for confirmation of lien, sale of real estate, and entry of a qualified domestic relations order." She alleged child support arrearages of $7,770 and $14,687.34, respectively, in case numbers 82-D-24518 and 85-MR-111. Adding statutory interest, Anita alleged a total arrearage of $65,976.46. Anita claimed that there was an existing lien in that amount against the assets of the Estate by operation of section 505(d) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505(d) (West 2012) ("[A] lien arises by operation of law against the real and personal property of the noncustodial parent for each installment of overdue [child] support owed by the noncustodial parent.")). Those assets included real estate that James had owned in Elmhurst and a pension that he had earned from Iron Workers Mid-America. Anita sought an order directing the sale of the real estate and applying the proceeds to the support arrearage. She also sought a qualified domestic relations order (QDRO) applying James's pension to the arrearage.

¶ 5    The Estate responded by filing a nine-count motion to strike and dismiss Anita's petition. Count II of the motion asserted that Anita's petition was in the "wrong venue." Specifically, the Estate claimed that, because James was deceased and his and Anita's youngest child was long since emancipated, Anita should have brought her action in probate court rather than domestic relations court.

¶ 6    Following a hearing on the motion to strike and dismiss, the trial court agreed with the Estate that the court had no jurisdiction because the divorce action abated upon James's death. The court denied the motion to strike and dismiss except as to count II. On that count, the court entered a dismissal but stayed it "for 60 days, pending the filing of a new action to foreclose any lien claimed by [Anita]."

¶ 7    Anita filed a motion to reconsider, citing case law to the effect that a party's death prior to entry of the final decree of divorce will abate the divorce proceeding, but that if the death occurs subsequent to the final decree there is no abatement. See, *e.g.*, *Fox v. Coyne*, 25 Ill. App. 2d 352, 360 (1960).

¶ 8    In its response to the motion to reconsider, the Estate cited section 510(e) of the Marriage Act (750 ILCS 5/510(e) (West 2012)), which states that "[t]he right to petition for support or educational expenses, or both, under Sections 505 [(750 ILCS 5/505 (West 2012))] and 513 [(750 ILCS 5/513 (West 2012))] is not extinguished by the death of a parent," but that "a claim *** against the estate of a decedent" for support or educational expenses is time-limited "by the provisions of the Probate Act of 1975 [(Probate Act) (755 ILCS 5/1-1 *et seq.* (West 2012))], as a barrable, noncontingent claim." The Estate contended that Anita's claim was time-barred under section 18-12(b) of the Probate Act (755 ILCS 5/18-12(b) (West 2012)), which imposes an outer limit of two years for claims against a decedent's estate.

¶ 9    The motion to reconsider proceeded to hearing. In taking the matter under advisement, the court noted that its initial impression was that section 510(e) applied to new claims for child support, not attempts to collect arrearages of support previously ordered.

¶ 10    The court subsequently granted the motion to reconsider, finding that Anita was "entitled to attempt enforcement of any child support arrearage against the [E]state in this court." The Estate subsequently filed its response and affirmative defenses to Anita's petition. On Anita's motion, the court struck the response as too indefinite. In its amended response, the Estate brought several affirmative defenses. For instance, the Estate claimed *laches* and also reasserted that Anita's petition was barred under section 510(e) of the Marriage Act and section 18-12(b) of the Probate Act.

¶ 11    Further motion practice followed, and ultimately the court struck all affirmative defenses raised by the Estate except for *laches*. Anita's petition then proceeded to a bench trial. The court found in Anita's favor and entered judgment against the Estate for $68,562.70, which comprised a child support arrearage of $22,457.34 plus $46,105.36 in statutory interest. The court also entered a QDRO against James's pension. Finally, the court awarded Anita costs but declined to award her attorney fees.

¶ 12    The Estate filed a notice of appeal challenging the trial court's judgments (1) granting Anita's motion to reconsider the dismissal of her petition; (2) striking the Estate's affirmative defenses except for *laches*; and (3) finding, after trial, that *laches* did not apply to Anita's claim. Anita cross-appealed the denial of attorney fees.

- 3 -

## II. ANALYSIS

The Estate raises several contentions on appeal. One of them is that the trial court erred in ruling that section 510(e) of the Marriage Act, which incorporates the time limits of section 18-12(b) of the Probate Act, did not bar Anita's claim against the Estate for overdue child support. The trial court's disagreement with the Estate over the impact of section 510(e) and section 18-12(b) on this case was the basis both for the court's judgment vacating its dismissal of Anita's petition and for its later judgment striking the Estate's affirmative defenses, one of which renewed the Estate's contention that Anita's claim was time-barred under those sections. We agree with the Estate that Anita's claim was indeed time-barred under section 510(e) and section 18-12(b).

We begin with section 505(a) of the Marriage Act (750 ILCS 5/505(a) (West 2012)), which provides that, in a proceeding for dissolution of marriage, the trial court "may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for the support." (Section 513 of the Marriage Act (750 ILCS 5/513 (West 2012)), which is not involved in this appeal but is cited in section 510(e), permits the court in a dissolution proceeding to make an award for the support of non-minor children.) Section 510 of the Marriage Act (750 ILCS 5/510 (West 2012)) concerns proceedings for the modification or termination of provisions for spousal maintenance, child support, educational expenses, and property disposition. Applicable here are subsections (d) and (e) of section 510, which state:

> "(d) Unless otherwise provided in this Act, or as agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child, or if the child has attained the age of 18 and is still attending high school, provisions for the support of the child are terminated upon the date that the child graduates from high school or the date the child attains the age of 19, whichever is earlier, but not by the death of a parent obligated to support or educate the child. An existing obligation to pay for support or educational expenses, or both, is not terminated by the death of a parent. When a parent obligated to pay support or educational expenses, or both, dies, the amount of support or educational expenses, or both, may be enforced, modified, revoked or commuted to a lump sum payment, as equity may require, and that determination may be provided for at the time of the dissolution of the marriage or thereafter.

> (e) The right to petition for support or educational expenses, or both, under Sections 505 [(750 ILCS 5/505 (West 2012))] and 513 [(750 ILCS 5/513 (West 2012))] is not extinguished by the death of a parent. Upon a petition filed before or after a parent's death, the court may award sums of money out of the decedent's estate for the child's support or educational expenses, or both, as equity may require. The time within which a claim may be filed against the estate of a decedent under Sections 505 and 513 *and subsection (d) and this subsection* shall be governed by the provisions of the Probate Act of 1975 [(755 ILCS 5/1-1 *et seq.* (West 2012))], as a barrable, noncontingent claim." (Emphasis added.) 750 ILCS 5/510(d), (e) (West 2012).

In the italicized language in the last sentence of subsection (e), the legislature mentions claims under subsection (d) separately from claims under subsection (e). We presume that the legislature thereby contemplated a substantive distinction between two types of claims for

support against a deceased parent's estate. See *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 280 (2003) ("Each word, clause and sentence of the statute, if possible, must be given reasonable meaning and not rendered superfluous."). Evidently, the distinction is that subsection (d), in its final two sentences, concerns a claim against an estate based on a support obligation existing at the parent's death, while the first two sentences of subsection (e) concern a claim against the estate for an initial or "new" award of support. The comprehensive conjunctive in the final sentence of subsection (e) subjects to the Probate Act all claims for support against an estate, whether the claims are based on support obligations existing at the parent's death or are "new" claims for support. Moreover, with respect to the class of claims based on existing support obligations, there is no language in subsection (e) excepting claims for support *arrearages* from the governance of the Probate Act. Therefore, Anita's claim for an arrearage is governed by the Probate Act.

¶ 17    Section 18-12 of the Probate Act specifies limitations periods for claims against a decedent's estate, providing in relevant part:

> "(a) Every claim against the estate of a decedent, except expenses of administration and surviving spouse's or child's award, is barred as to all of the decedent's estate if:
>
>> (1) Notice is given to the claimant as provided in Section 18-3 and the claimant does not file a claim with the representative or the court on or before the date stated in the notice; or
>>
>> (2) Notice of disallowance is given to the claimant as provided in Section 18-11 and the claimant does not file a claim with the court on or before the date stated in the notice; or
>>
>> (3) The claimant or the claimant's address is not known to or reasonably ascertainable by the representative and the claimant does not file a claim with the representative or the court on or before the date stated in the published notice as provided in Section 18-3.
>
> (b) *Unless sooner barred under subsection (a) of this Section, all claims which could have been barred under this Section are, in any event, barred 2 years after decedent's death, whether or not letters of office are issued upon the estate of the decedent.*" (Emphasis added.) 755 ILCS 5/18-12 (West 2012).

Anita's claim was brought more than two years after James's death. Thus it was barred.

¶ 18    Our reading of section 510(e) finds support in *In re Marriage of Epsteen*, 339 Ill. App. 3d 586, 597 (2003), where the First District rejected the suggestion that section 510(e) subjects to the Probate Act only "new claim[s] for support," not claims for "enforcement [or] modification [of] an existing court order."

¶ 19    Anita, however, proposes several reasons why section 510 does not apply to claims for child support arrearages. First, she cites sections of the Code of Civil Procedure (Code) (735 ILCS 5/1-101 *et seq.* (West 2012)) regarding the revival and enforcement of judgments. These sections apply here, Anita claims, because judgments of arrearage, and related liens, have already arisen in this case by operation of law. She cites section 505(d) of the Marriage Act (750 ILCS 5/505(d) (West 2012)):

> "(d) Any new or existing support order entered by the court under this Section shall be deemed to be a series of judgments against the person obligated to pay

support thereunder, each such judgment to be in the amount of each payment or installment of support and each such judgment to be deemed entered as of the date the corresponding payment or installment becomes due under the terms of the support order. Each such judgment shall have the full force, effect and attributes of any other judgment of this State, including the ability to be enforced. *Notwithstanding any other State or local law to the contrary, a lien arises by operation of law against the real and personal property of the noncustodial parent for each installment of overdue support owed by the noncustodial parent.*" (Emphasis added.)

Before moving to the Code sections that Anita cites, we reemphasize that section 510(e) of the Marriage Act subjects to the Probate Act all claims for child support, including those based on arrearages existing when the payor died. Although a support arrearage automatically creates a lien against the payor's property, the existence of a lien does not obviate the need to file a claim under the Probate Act against the payor's estate. See *In re Estate of Garaway*, 80 Ill. App. 3d 401, 404 (1980) ("It is *** long established that the filing of a lien for the amount claimed from an estate is not equivalent to the filing of a claim.").

¶ 20    We move to the Code sections on which Anita relies. Section 2-1602 of the Code (735 ILCS 5/2-1602 (West 2012)) concerns the revival of judgments and provides pertinently:

"(a) A judgment may be revived by filing a petition to revive the judgment in the seventh year after its entry, or in the seventh year after its last revival, or in the twentieth year after its entry, or at any other time within 20 years after its entry if the judgment becomes dormant. The provisions of this amendatory Act of the 96th General Assembly are declarative of existing law.

* * *

(g) *This Section does not apply to a child support judgment* or to a judgment recovered in an action for damages for an injury described in Section 13-214.1 [(735 ILCS 5/13-214.1 (West 2012))], which need not be revived as provided in this Section and which may be enforced at any time as provided in Section 12-108 [(735 ILCS 5/12-108 (West 2012))]." (Emphasis added.)

¶ 21    Section 12-108 (735 ILCS 5/12-108 (West 2012)), cited in section 2-1602, concerns the enforceability of judgments, stating in relevant part:

"(a) Except as herein provided, no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2-1601 of this Act [(735 ILCS 5/2-1601 (West 2012))]; but real estate, levied upon within the 7 years, may be sold to enforce the judgment at any time within one year after the expiration of the 7 years. A judgment recovered in an action for damages for an injury described in Section 13-214.1 [(735 ILCS 5/13-214.1 (West 2012))] may be enforced at any time. *Child support judgments, including those arising by operation of law, may be enforced at any time.*" (Emphasis added.)

¶ 22    We have found nothing in the Code, the Marriage Act, or the Probate Act to explain the interplay of these statutes as to the question at hand. It also appears that no published Illinois decision has addressed the issue.

¶ 23    In deciding the matter, however, we have recourse to the canons of statutory interpretation. "[W]here there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail." (Internal quotation marks omitted.) *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195 (1992).

¶ 24    Under this canon, section 510(e) governs because it has the greater particularity. Sections 2-1602 and 12-108 of the Code concern child support judgments generally, while section 510(e) specifically addresses child support claims (including, as we have emphasized, claims for arrearages) against a deceased payor's estate.

¶ 25    Anita does not cite it, but section 12-157 of the Code (735 ILCS 5/12-157 (West 2012)) explains how the death of a judgment debtor affects the enforceability of an existing judgment:

> "If a person dies, after a court enters on judgment for the payment of money against him or her, the judgment may be enforced against the real estate of such deceased person, or a sale may be made under such judgment, without reviving the judgment against his or her heirs, legatees or legal representatives. No sale shall be made until after the expiration of 12 months from the death of such deceased person, nor shall any sale be had on such judgment until the person in whose favor the judgment is sought to be enforced shall give to the executor or administrator, or if there is neither, the heirs of the deceased, at least 3 months' notice of the existence of such judgment, before proceeding to sell, which notice shall be in writing if the parties required to be notified reside or may be found within the State, and their place of residence known, otherwise publication notice shall be given in the same manner as is provided for other civil cases."

Section 12-157 is a general provision on the survival of judgments against a party who later dies; it speaks of judgments generally and does not address judgments for child support specifically. (In an interesting comparison, sections 2-1602 and 12-108 of the Code address the enforceability of child support judgments but do not specifically address enforceability against a decedent's estate.) Section 510(e) of the Marriage Act, by contrast, specifically addresses child support claims against the estate of a deceased, and its sweeping language renders all such claims subject to the Probate Act, including those based on judgments and liens that have arisen automatically by operation of section 505(d) of the Marriage Act. Therefore, section 510(e) is the more particular provision.

¶ 26    Moreover, section 12-157 is not at odds with section 18-12 of the Probate Act. The first sentence of section 12-157 addresses a subject–the revival of judgments–about which section 18-12 simply is not concerned. The remainder of the section establishes a 12-month waiting period for the sale of the deceased's real property in satisfaction of the judgment and requires that advance notice of the sale be given to the executor or administrator of the deceased's estate or, if there is none, to the heirs of the deceased. There is no facial conflict between these sale and notice provisions and the time strictures in section 18-12 for filing a claim against an estate. Section 12-157 may be read to assume that a claim with respect to the deceased debtor's real estate was filed against the estate in compliance with section 18-12. See *Martinez v. County of Stephenson*, 268 Ill. App. 3d 427, 430 (1995) ("Statutes that address the same subject matter are *in pari materia* and, if possible, should receive harmonious and consistent constructions.").

¶ 27    We turn to Anita's remaining reasons for why we should not apply section 510 of the Marriage Act to her claim for overdue child support. First, Anita cites remarks from case law that, in her view, demonstrate "the inviolability of lien rights." She quotes the following remark from *Tinney v. Wolston*, 41 Ill. 215, 219 (1866): "There is no rule of law better recognized than that a person who gives to another a valid lien, or against whom the law has created a lien, is unable, by any act of his short of discharging it, to impair or affect it." She also cites these remarks from *Temesvary v. Houdek*, 301 Ill. App. 3d 560, 564-65 (1998):

> "The legislature has the power, subject to constitutional limitations, to provide for liens to secure the payment of debts and other obligations, and legislative authority exists to create by statute a right of lien where no such right existed at common law. [Citation.] Lien laws are liberally construed to effect the purpose intended by the legislature."

¶ 28    These statements do not on their face bar application of the Marriage Act and the Probate Act to Anita's claim, and she provides no context from the cases by which we might better evaluate their pertinence. Therefore, we reject this point.

¶ 29    Anita also characterizes her claim for delinquent child support as an *in rem* action that operates independently of the strictures of section 18-12 of the Probate Act. Comparing claims for overdue support to mortgage foreclosure actions, Anita cites the holding of the First District in *Financial Freedom v. Kirgis*, 377 Ill. App. 3d 107, 127 (2007), that an action to foreclose a mortgage, being an action *in rem*, is not subject to section 18-12. In so holding, the *Financial Freedom* court relied on two supreme court decisions, *Markus v. Chicago Title & Trust Co.*, 373 Ill. 557, 561 (1940), and *Waughop v. Bartlett*, 165 Ill. 124, 129-30 (1896), which held that a foreclosure action is an *in rem* proceeding. Anita fails to acknowledge, however, that the supreme court's decision in *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526, 538 (2010), overruled *Markus*, *Waughop*, and *Financial Freedom* and held that foreclosure actions are quasi *in rem*, not *in rem*, proceedings. In its reply brief, the Estate points out the omission, characterizing it as a "critical mistake." We presume that the failure to acknowledge the overruling of these authorities was careless and not intentional. Not only, however, do we expect greater care in the citation of authorities, we also expect a party to acknowledge and apologize for her citation of overruled authority when the opposing party points it out. Here, when the Estate in its reply brief identified the error, Anita's subsequent reply in support of her cross-appeal failed to acknowledge it.

¶ 30    As Anita provides no authority apart from *Markus*, *Waughop*, and *Financial Freedom* for her notion that proceedings for overdue child support are *in rem* proceedings, we reject her contention.

¶ 31    In conclusion, we hold that section 510(e) of the Marriage Act applies to Anita's claim against the Estate for overdue child support. Under section 18-12(b) of the Probate Act, which section 510(e) incorporates, Anita's claim is untimely and, consequently, barred. Therefore, the trial court erred in granting Anita's motion to reconsider its dismissal of her petition. Since our decision on this issue is dispositive of this appeal, we need not address the Estate's remaining contentions of error. Also, our decision moots Anita's cross-appeal of the trial court's decision denying her request for attorney fees in connection with her claim against the Estate.

¶ 32    We note that the court had originally stayed the dismissal of Anita's petition "for 60 days, pending the filing of a new action to foreclose any lien claimed by [Anita]." As Anita's claim

for overdue support falls under, and is categorically foreclosed by, section 510(e) of the Marriage Act, we direct the court on remand to enter a dismissal with prejudice.

¶ 33                                III. CONCLUSION

¶ 34        For the foregoing reasons, we reverse the judgment of the circuit court of Du Page County and remand this case for the court to dismiss with prejudice Anita's petition for overdue child support.

¶ 35        Reversed and remanded with directions.